**2018 UT App 164**

### THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
AARON GASPER,
Appellant.

Opinion
No. 20160872-CA
Filed August 23, 2018

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 141913141

Herschel Bullen, Attorney for Appellant

Sean D. Reyes, Jeanne B. Inouye and Jeffrey D. Mann,
Attorneys for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE A. TOOMEY and RYAN M. HARRIS concurred.

MORTENSEN, Judge:

¶1      Defendant Aaron Gasper hosted a house party in the summer of 2014. Following the party, a teenage guest accused Gasper of twice raping her during the course of the evening. The State charged Gasper with two counts of rape and sought to admit evidence under rule 404(b) of the Utah Rules of Evidence of a previous instance of alleged sexual assault involving Gasper. The district court admitted the evidence for the noncharacter purpose of intent and under the doctrine of chances. Gasper later pled guilty to second degree forcible sexual abuse, preserving his right to appeal the district court's ruling admitting the disputed bad act evidence. The district court subsequently sentenced Gasper to an indeterminate prison term of one-to-fifteen years, rejecting his request to impose probation instead of prison. He appeals and we affirm.

BACKGROUND

*Victim Incident*

¶2     In August 2014, Victim attended a friend's birthday party that Gasper hosted at his home. Victim testified that she let the party guests know that she had a boyfriend and was not romantically interested in anyone else. She also tried to limit her alcohol consumption—she had "two or three strawberry-flavored ales." At the party, Victim met Gasper for the first time.

¶3     As the party progressed, Gasper repeatedly attempted to convince Victim to drink shots of alcohol, which she declined until later in the night. When she finally did drink one of the shots Gasper offered her, Victim immediately became nauseated and tired. Gasper, a licensed massage therapist, then offered to give her a massage. Victim allowed Gasper to give her a massage with the caution that he "[could not] touch anything that would normally be covered by [her] underwear." She then lay on the floor and fell asleep as he massaged her back.

¶4     The next thing Victim remembered was being wakened in the dark and moved to a couch. She vomited while she was on the couch, and someone—she believed it was Gasper—gave her a clean T-shirt to wear. She again fell asleep and awoke the next morning only to realize that Gasper "was currently having sex with [her]." Somehow, she had been moved from the couch to a bedroom, where she awoke to a "burning and tearing sensation in . . . the vagina and labia"—with Gasper on top of her.

¶5     Victim immediately put on her clothes and went home. Upon arriving home, she texted a few friends, including her boyfriend, about what had happened. One of her friends took her to the police station a few hours later. Afterward, she went to the emergency room, where medical personnel collected evidence for a rape kit. She later talked to a police detective about the incident, stating that she did not give Gasper any indication she was interested in him and, more importantly, she did not consent to having sexual intercourse with him.

¶6    Gasper, when later interviewed, admitted to the police that he had sexual intercourse with Victim when they were sitting on the couch together while the party was winding down. When asked about being in the bedroom with Victim the next morning, he said that he wanted to lie with her in the bed and that she needed assistance.

*The Alleged Previous Incident*

¶7    Prior to trial, the State moved to admit bad act evidence against Gasper. During the evidentiary hearing on the State's motion, Witness gave an account of her alleged experience with Gasper in January 2013. At that time, she and her brother, (Brother) were living together. Witness testified that around 10 p.m., Brother brought a couple of friends home. One of the friends was Gasper.

¶8    This was the first time Witness had met him. Witness also testified that despite her protests, Gasper kept inappropriately touching her, including her buttocks. She told Gasper that she had a boyfriend and was not interested in him, to which Gasper responded, "Oh, I do this all the time . . . I'll make you feel better." Witness testified that she "knew [Gasper] was a massage therapist . . . and that was the indication that he gave me . . . [that he could] make my shoulders so I wasn't tense." She rejected his offer and continued to decline his additional physical advances.

¶9    At some point in the evening, he brought her an already-opened beer. She accepted the drink and they both proceeded to "chug" their respective beers. Almost immediately, she felt dizzy, sick, and very tired, as though she needed to go to sleep. Sensing impending sickness, she headed to her bedroom to lie down—alone.

¶10    Witness did not wake up until 4 p.m. the next day, which was very unusual for her. When she awoke, she was completely nude, which was also out of character. Because she shared the apartment with her brother, Witness testified that she never slept without clothes on. Additionally, after waking up, she

experienced vaginal pain "like she might be torn." When she went to remove a tampon that she had inserted the night before, she initially could not find it. She then realized it was lodged deep inside of her, and she was eventually able to remove it only with great difficulty.

¶11   A couple of days later, Witness discussed the experience with Brother,[1] and he told her that he had seen Gasper coming out of her bedroom on the morning in question. At that point, she contacted rape crisis counselors and filed a report.

*Summary of Proceedings*

¶12   The State charged Gasper with two counts of rape for his conduct against Victim. The State filed a motion to admit evidence of Gasper's alleged assault on Witness under rule 404(b) of the Utah Rules of Evidence, but the court later struck that motion when the State could not proceed at the scheduled evidentiary hearing.

¶13   The State then filed a second motion to admit the evidence, arguing that evidence of Gasper's alleged sexual assault on Witness was relevant to establish Gasper's intent to engage in sexual intercourse without Victim's consent, to show a lack of accident or mistake as to consent, and to rebut Gasper's claim that Victim was fabricating her allegations. The State also argued that the evidence was relevant under the doctrine of chances and any risk of unfair prejudice in admitting the evidence did not substantially outweigh its probative value. After an evidentiary hearing during which it heard the

_____

1. At the evidentiary hearing on the State's motion to admit bad act evidence against Gasper, Brother confirmed that sometime after the bars closed that night, he, a cousin, and Gasper had gathered at the apartment where he and Witness lived. Witness was already there. All were drinking and around 2 a.m., Brother went to bed. Around 10:30 a.m. the next morning, he saw Gasper emerge from Witness's room.

testimony of Witness and Brother, the district court granted the State's motion to admit the evidence and entered corresponding findings of fact and conclusions of law.

¶14   Gasper later entered a plea of guilty to one count of forcible sexual abuse, a second degree felony, the terms of which preserved his right to appeal the district court's ruling admitting the bad act evidence of his conduct against Witness. The district court sentenced Gasper to a prison term of one-to-fifteen years, rejecting his request to impose probation instead of prison. Gasper appeals.

## ISSUES AND STANDARDS OF REVIEW

¶15   Gasper raises two issues on appeal.[2] First, he argues that the district court abused its discretion under rule 404(b) by admitting the bad act evidence against Gasper. We review a district court's decision to admit evidence under rule 404(b) for abuse of discretion, *State v. Reece*, 2015 UT 45, ¶ 17, 349 P.3d 712, and assess "whether the district judge made an error in admitting or excluding the evidence in question," *State v. Thornton*, 2017 UT 9, ¶ 53, 391 P.3d 1016 (emphasis omitted). In other words, we do not focus on the path the district court took in reaching its conclusion, but review only the conclusion itself. *Id.* ¶ 3 ("[A]ppellate review of evidentiary rulings is on the decision made at trial, not the process by which that decision is reached.").

¶16   Second, Gasper argues that the district court abused its discretion by unfairly sentencing him to prison—rather than

---

2. During oral argument before the Court of Appeals, Gasper raised, for the first time, the argument that the district court created unfair prejudice against Gasper by implying that a date-rape drug was used by Gasper against Victim and Witness. Not having been previously raised, this issue is unpreserved and we therefore decline to address it further.

suspending his sentence and imposing probation and monitoring—in light of his "background and the crime committed" as well as "the interests of society." We review the district court's sentencing decision, including its decision to grant or deny probation, for abuse of discretion. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167. "An abuse of discretion results when the judge fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *Id.* (cleaned up).

ANALYSIS

I. Admission of Bad Act Evidence

¶17    Gasper asserts that the district court abused its discretion by admitting bad act evidence under rule 404(b) of the Utah Rules of Evidence. His contention lacks merit because the bad act evidence meets the admissibility standards under rule 404(b), which provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character . . . . [but] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Utah R. Evid. 404(b). Accordingly, evidence of a defendant's bad act is not admissible to show a defendant's propensity to engage in criminal behavior. *State v. Burke*, 2011 UT App 168, ¶ 29, 256 P.3d 1102. But bad act evidence may be admissible under rule 404(b) for other proper, noncharacter purposes. *See* Utah R. Evid. 404(b)(2).

¶18    Although appellate review regarding the admission of evidence is ultimately limited to "whether the district judge

made an error," our supreme court has also noted that best practice encourages the court to "march[] through the standards set forth in rules 404(b), 402, and 403, and present[] . . . analysis on the record. And the judge who does so will be better-positioned to have [the] decision on admissibility of prior misconduct evidence affirmed on appeal." *State v. Thornton*, 2017 UT 9, ¶ 54, 391 P.3d 1016.

¶19 Pursuant to this framework, to be admissible, the evidence (1) must be "offered for a genuine, noncharacter purpose," (2) "must be relevant,"[3] and (3) "the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice." *State v. Lucero*, 2014 UT 15, ¶ 13, 328 P.3d 841, *abrogated on other grounds by Thornton*, 2017 UT 9. Here, the evidence against Gasper meets this criteria. The evidence was appropriately admitted for a proper, noncharacter purpose[4] of showing Gasper's intent to engage in sexual intercourse without Victim's consent; the evidence was relevant; and the probative value of the evidence was not outweighed by the danger of unfair prejudice.

A.     Noncharacter Purpose

¶20     Historically, "evidence that a defendant raped others has been viewed solely as impermissible character evidence and has not been considered probative of whether a current victim was raped." *State v. Nelson-Waggoner*, 2000 UT 59, ¶ 24, 6 P.3d 1120. However, in more recent years, courts have admitted such bad

---

3. As our supreme court has noted, "Relevance is a low bar." *State v. Thornton*, 2017 UT 9, ¶ 61, 391 P.3d 1016. Evidence is relevant if it has "any" tendency to make a fact of consequence more or less probable. Utah R. Evid. 401.

4. The State also argues that the doctrine of chances applies regarding the admissibility of evidence in this case. But because we affirm the decision of the district court on the grounds of intent, we need not address every possible noncharacter basis.

act evidence "for the noncharacter purpose of proving the element of lack of consent in certain rape trials. This is especially true when a defendant allegedly obviates the victim's consent in a strikingly similar manner in several alleged rapes." *Id.* While this evidence "is not conclusive proof that the victim did not consent," such evidence is "both relevant and material to the issue of consent and therefore properly admissible." *See id.* (cleaned up) (holding that evidence of two other instances of alleged rape suggested lack of consent and was therefore admissible as noncharacter evidence where the defendant used the same pattern of painful sexual positions).

¶21 Here, the similarities between the two incidents suggest a lack of consent. In both instances, the victims reported being touched by Gasper under the pretense of a "professional massage"; being given unsealed alcoholic drinks by Gasper; feeling sick and abnormally tired after consuming their drinks; and waking up to find that they had been—or were being—sexually assaulted. The two incidents represent a pattern of behavior that is distinctively similar and therefore admissible to show intent—a permissible noncharacter purpose. *See State v. Marchet*, 2014 UT App 147, ¶ 29, 330 P.3d 138 (affirming the admission of rule 404(b) evidence where "the similarities between the events . . . rendered the bad act[] evidence relevant to [show intent]"). Therefore, Gasper's repeated, parallel acts can be properly used to show his intent to engage in sexual activity without Victim's consent.

B.    Relevance

¶22 Admission of Gasper's alleged rape of Witness is relevant to show his intent to engage in sexual intercourse with Victim without her consent. Under Utah law, rape has only two elements: sexual intercourse and lack of consent. As one of only two elements, proof of a lack of consent is material to the crime of rape. *See* Utah Code Ann. § 76-5-402(1) (LexisNexis 2017) ("A person commits rape when the actor has sexual intercourse with another person without the victim's consent."); *see also Nelson-Waggoner*, 2000 UT 59, ¶ 27. Consent was the only issue at trial

because Gasper admitted to having sexual intercourse with Victim at the party. Because the bad act evidence makes the existence of a material fact—Victim's lack of consent—more probable than it would have been without the admission of the act, it is relevant under rule 402. *See Nelson-Waggoner*, 2000 UT 59, ¶¶ 27–28.

## C. Probative Value Outweighs Danger of Unfair Prejudice

¶23   Any potential prejudice[5] Gasper may have suffered due to the admission of the evidence does not substantially outweigh its probative value. Admission of evidence is unfairly prejudicial only if it creates "an undue tendency to suggest decision on an improper basis." *State v. Maurer*, 770 P.2d 981, 984 (Utah 1989); *see also State v. Burke*, 2011 UT App 168, ¶ 34, 256 P.3d 1102. Here, admission of the prior bad act evidence does not suggest a decision made on an improper basis. We agree with the State that Gasper's conduct toward Victim was "pretty prejudicial by itself." Both instances included: powerful and possibly tainted drinks; getting sick and becoming abnormally tired; getting a massage from Gasper; and being sexually assaulted. Because the two events are so similar, the district court determined that it was unlikely that a jury would find Gasper's conduct toward his first target "any more offensive or disturbing" than his conduct

---

5. During argument before the district court, both parties discussed the "overmastering hostility" factor as it related to prejudice, despite that metric being rejected by the Utah Supreme Court in *State v. Cuttler*, 2015 UT 95, ¶ 20, 367 P.3d 981. On appeal, Gasper asserts that the district court's consideration of the "overmastering hostility" factor constitutes fundamental error. This claim is both unpreserved and invited error, and we decline to address the issue further. *See, e.g., State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (holding that invited error exists when counsel "either by statement or act, affirmatively represent[s] to the court" an incorrect statement of law). In any event, as explained above, the only question on appeal is whether the evidence should not have been admitted.

toward Victim. Accordingly, the district court did not abuse its discretion in admitting the bad act evidence.

## II. Improper Sentencing

¶24   Gasper contends that the district court abused its discretion by sentencing him to an indeterminate prison term of one-to-fifteen years instead of suspending his prison sentence and granting him probation. He claims that the sentence is unfair "in light of [his] background and the crime committed" as well as "the interests of society which underlie the criminal justice system." This argument is unavailing because Gasper has not demonstrated that the district court "fail[ed] to consider all legally relevant factors or [that] the sentence imposed is clearly excessive." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (cleaned up).

¶25   Due process "requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence." *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). Criminal sentences "should be appropriate for the defendant in light of his background and the crime committed and also serve the interests of society which underlie the criminal justice system." *State v. McClendon*, 611 P.2d 728, 729 (Utah 1980).

¶26   In determining a proper punishment, the court has "wide latitude" in sentencing, and the sentencing decision will be reversed "only if it is an abuse of the judge's discretion." *State v. Scott*, 2017 UT App 103, ¶ 10, 400 P.3d 1172 (cleaned up). An abuse of discretion results only when the sentencing judge "fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *Valdovinos*, 2003 UT App 432, ¶ 14 (cleaned up). In other words, an abuse of discretion results only if "no reasonable person would take the view adopted by the district court." *Scott*, 2017 UT App 103, ¶ 10 (cleaned up).

¶27   Here, there was no abuse of discretion. Gasper attempts to convince this court that because he is only thirty-six years old

and has completed an associate's degree, the court abused its discretion by denying him probation.[6] This argument lacks merit as it suggests that a person's education, background, or age alleviates the significant, aggravated nature of the crime of forcible sexual abuse. While Gasper persistently asserts that the district court abused its discretion, he fails to identify any concrete reasons as to why, other than his age and background, the sentence imposed is inherently unfair. And the sentencing court expressly considered his age, background, and education in determining Gasper's sentence. Therefore, we affirm the district court's sentencing on the basis that Gasper has not demonstrated that the district court "fail[ed] to consider all legally relevant factors or [that] the sentence imposed [was] clearly excessive." *Valdovinos*, 2003 UT App 432, ¶ 14 (cleaned up).

## CONCLUSION

¶28　We conclude that the district court did not abuse its discretion by allowing evidence of Gasper's prior alleged assault. We also conclude that Gasper's improper sentencing claim lacks merit because he has failed to demonstrate that the district court abused its discretion. Accordingly, we affirm.

———————

6. A district court has broad discretion in deciding whether to grant probation. This is because "[t]he granting or withholding of probation involves considering intangibles of character, personality and attitude, of which the cold record gives little inkling." *State v. Rhodes*, 818 P.2d 1048, 1049 (Utah Ct. App. 1991) (cleaned up). Thus, "whether to grant probation is within the complete discretion of the [district] court." *Id.* A reviewing court may overturn the denial of probation only if it is "clear that the actions of the judge were so inherently unfair as to constitute abuse of discretion." *Id.* at 1051 (cleaned up).