**2018 UT App 235**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JASON REED AKERS,
Appellant.

Opinion
No. 20170713-CA
Filed December 20, 2018

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 171401387

Leah Jordana Aston and Dallas B. Young,
Attorneys for Appellant

Sean D. Reyes and Jonathan S. Bauer,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES KATE APPLEBY[1] and RYAN M. HARRIS concurred.

ORME, Judge:

¶1      Defendant Jason Reed Akers appeals his sentences, arguing that the district court abused its discretion by relying on allegedly irrelevant and unreliable information contained in his presentence investigation report (the PSIR) when it imposed sentence. Alternately, Akers contends that his defense counsel rendered ineffective assistance by failing to object to the challenged information in the PSIR prior to sentencing. We affirm.

---

1. Judge Kate A. Toomey has resumed the use of her birth name and is now known as Judge Kate Appleby.

BACKGROUND

¶2    In April 2017, 38-year-old California resident Jason Reed Akers used a social media platform to "message" a teenager. The profile he reached out to indicated that it belonged to a 13-year-old girl who resided in Utah, but in reality it belonged to an undercover Special Agent with Homeland Security Investigations.[2] Akers told the girl that he would be in Utah in two days and wanted to meet her. She quickly asked whether he was "cool" with her only being 13 years old. He answered, "Leave age out of this. Nobody should know, right?," and shortly thereafter he asked if she was a virgin. After she confirmed that she was, he told her that he wished to "take" her virginity and named the sexual acts he wanted the two of them to perform. Akers twice unsuccessfully requested that the girl send him pictures of her genitals, but her refusal did not prevent him from sending her a pornographic video and two photographs depicting a penis.

¶3    Akers and the girl arranged to meet at a park in Utah County. At the girl's request, Akers agreed to bring condoms, lubricant, an energy drink, and cookies. Akers also asked the girl whether she drank or smoked, to which she replied that she never had but would "be curious." Akers then told her that he would bring "special gummy worms, . . . THC special."[3]

---

2. To better facilitate recounting the facts of this case, we refer to the Special Agent by her undercover persona, "the girl," in this opinion.

3. "THC" is an acronym for "tetrahydrocannabinol," which is a "crystalline compound that is the main active ingredient of cannabis." *Tetrahydrocannabinol*, New Oxford American Dictionary 1794 (3d ed. 2010). In Utah, THC is categorized as a

(continued…)

¶4 Authorities arrested Akers as he waited for the girl at the arranged meeting place. Officers found a pipe containing methamphetamine in his vehicle, in plain view, and Akers subsequently admitted to smoking the drug during his drive from California to Utah. A more thorough search of the vehicle also produced lubricant, THC gummy worms, and a handgun. During interrogation, Akers admitted sending the messages and pornographic images to the girl and possessing the pipe and illegal substances found in his vehicle.

¶5 The State charged Akers with six felony and three misdemeanor counts. Akers and the State entered into a plea agreement in which Akers agreed to plead guilty to three of the nine charges. He pled guilty to one count of enticing a minor, a second degree felony; one count of dealing in materials harmful to a minor, a third degree felony; and one count of possession of a firearm by a restricted person, a third degree felony. In exchange, the State agreed to drop the remaining six charges, including a charge for possession of the THC gummy worms.

¶6 Prior to sentencing, Adult Probation and Parole prepared the PSIR. It recited the circumstances surrounding Akers's arrest, including a single mention that officers located a gun, a pipe containing methamphetamine, and "marijuana gummy [worms]" in Akers's vehicle. The PSIR recommended a sentence of only 105 days, with credit for time served, followed by 36 months of supervised probation.

¶7 At the sentencing hearing, the district court began by inquiring whether the PSIR contained any errors. Akers's defense counsel replied that it did not, stating, "[W]e don't have

(…continued)
Schedule I controlled substance. *See* Utah Code Ann. § 58-37-4(2)(a)(iii)(AA) (LexisNexis Supp. 2018).

any corrections with the pre-sentence report," and he urged the court to follow the PSIR's sentencing recommendation. The State asked the court to deviate from the recommendation, arguing that Akers's case was not a "typical enticement of a minor case." In support of this assertion, the State recounted how, among other things, authorities had apprehended Akers with the THC gummy worms, methamphetamine, and a handgun in his possession. Akers's counsel responded that the district court should not consider such "ancillary incidences" because they were unsubstantiated and Akers had not pled guilty to them. Counsel emphasized that this was Akers's first offense and once more urged the district court to follow the PSIR's sentencing recommendation.

¶8     Following these arguments, the district court asked Akers why he was in possession of the gun and THC gummy worms while waiting to meet his intended victim. Akers replied that he had forgotten the gun was in the vehicle and that he was "certified in California for medicinal marijuana." The district court then noted that it appeared that the THC gummy worms were intended for the girl.

¶9     The district court deviated from the PSIR's recommendation and imposed concurrent sentences of 1 to 15 years imprisonment on the enticement of a minor count and 0 to 5 years each on the remaining two counts. It explained that of the many enticement-of-a-minor cases to which it had previously been assigned, this case stood out because "this is the first one [it had] ever seen with a gun and with THC gummy [worms]," as well as methamphetamine. As such, it appeared to the court that Akers was "going to kidnap a child, maybe kill it." The district court explained, "Had any of those circumstances been different, even the two states away is disconcerting but not enough to send [Akers] to prison for. It's the gun and the gummy [worms] that really concerns the Court so much."

¶10    After the district court explained its sentencing decision, Akers's counsel requested that the district court reconsider its decision without relying on "activity that [Akers] did not plead guilty to, such as the methamphetamine or the THC." Counsel argued that the district court's consideration of that information put Akers "in a position where he cannot defend himself, where he cannot assert his innocence to those issues." The district court responded that it was ordinary practice for courts to consider the facts contained in presentence investigation reports, which often include "uncharged criminal activity." It further explained that for that reason presentence investigation reports are either stipulated to, or evidentiary hearings are held to "get the final set of facts [to which] everybody agrees." The district court declined to reconsider the sentence. Akers appeals.

## ISSUES AND STANDARDS OF REVIEW

¶11    Akers asserts that the district court erred by largely basing its sentencing decision on the fact that he was in possession of THC gummy worms at the time of his arrest.[4] "The

---

4. Akers additionally contends that the district court had a statutory duty to make findings on the record regarding the accuracy and relevance of the information when his defense counsel objected to its reliance on the THC gummy worms in imposing sentence. Because the district court allegedly failed to meet its obligation, Akers argues that his case "should be remanded with instructions that the [district] court resolve [Akers's] objections to the inclusion of the irrelevant information in [the PSIR]." Although Utah Code section 77-18-1(6)(a) requires the district court to "make a determination of relevance and accuracy on the record" when parties object to the inclusion of unresolved information in presentence investigation reports, section 77-18-1(6)(b) requires the party to make the challenge "at
(continued…)

sentencing decision of a trial court is reviewed for abuse of discretion." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167. Although "we traditionally afford the district court wide latitude and discretion" in sentencing, a district court abuses its discretion when it relies on irrelevant or unreliable information when imposing sentence. *State v. Moa*, 2012 UT 28, ¶¶ 34, 36, 282 P.3d 985 (quotation simplified).

¶12 Alternatively, Akers argues that he received ineffective assistance when his defense counsel failed to object to the inclusion of the gummy worm information in the PSIR but instead affirmatively told the court that there were no errors in the PSIR. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of

---

(…continued)

the time of sentencing." *See* Utah Code Ann. § 77-18-1(6)(a)–(b) (LexisNexis Supp. 2018). Otherwise, "that matter shall be considered to be waived." *Id.* § 77-18-1(6)(b). Because Akers's defense counsel stated that the PSIR did not contain errors immediately before sentencing and challenged the inclusion of the information about THC gummy worms only after the district court imposed sentence, Akers waived any objections to the inclusion of the information in the PSIR. *See State v. Franz*, 2007 UT App 297U, para. 6 ("[W]hen trial counsel stated that he had reviewed the PSI with Defendant and 'there were no errors' in the PSI, he statutorily waived any objections to the document."). The district court therefore had no duty to hold an evidentiary hearing to address the objections belatedly made by Akers's defense counsel. On the record before us, it appears that the objections would have been unavailing in any event. The presence of the THC gummy worms in his vehicle was solidly documented.

law." *State v. Craft*, 2017 UT App 87, ¶ 15, 397 P.3d 889 (quotation simplified).

ANALYSIS

I. Abuse of Discretion in Sentencing

¶13 District courts are permitted to "consider a wide range of evidence" when fashioning an appropriate sentence. *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). But the latitude afforded to district courts is not without limit. The due process clause of the Utah Constitution requires district courts to base sentencing decisions "on reasonably reliable and relevant information." *Id.* *See* Utah Const. art. I, § 7. And "when there is evidence in the record showing a sentencing judge's reliance on specific information, we will not consider it improper for a judge to rely on such information if the evidence in question had indicia of reliability and was relevant in sentencing." *State v. Moa*, 2012 UT 28, ¶ 36, 282 P.3d 985 (quotation simplified). Thus, to show an abuse of discretion, a defendant bears the burden of establishing that the information the district court said it relied on in reaching its sentencing decision was unreliable or irrelevant. *Id.* ¶¶ 35–36.

¶14 In the present case, there is ample evidence in the record supporting the district court's reliance, when imposing sentence, on the information about Akers's possession of THC gummy worms. In explaining its decision to deviate from the PSIR's recommendation, the district court first noted that the combination of the gun, the THC gummy worms, and the methamphetamine made it appear that Akers intended to "kidnap a child, maybe kill it." The court further stated that it would not have sentenced Akers to prison "[h]ad any of those circumstances been different." But it was "the gun and the gummy [worms] that really concern[ed] the Court so much." This affirmative representation by the

court satisfies the first requirement for a possible showing that the district court abused its discretion. *See id.* ¶ 35 (requiring a defendant to show "evidence of reliance, such as an affirmative representation in the record that the judge actually relied on the specific information in reaching her decision"). Nonetheless, Akers's challenge to the district court's sentencing decision fails because he has not shown that the information about the gummy worms was unreliable or irrelevant.

A.    Reliability

¶15    District courts must base sentencing decisions on "reasonably reliable" information. *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). Information is reasonably reliable if it has sufficient "indicia of reliability." *Id.*

¶16    Here, Akers has failed to identify any substantive evidence that challenges the reliability of the information regarding his possession of the THC gummy worms. *See State v. Lingmann*, 2014 UT App 45, ¶ 41, 320 P.3d 1063. On the contrary, evidence in the record strongly supports the reliability of the challenged information. Not only did Akers's defense counsel explicitly state that the PSIR did not contain any errors, but Akers himself did not deny being in possession of the THC gummy worms when the district court asked why he had brought them to the expected encounter with the girl. Instead, Akers essentially acknowledged their presence in his vehicle by responding that he was "certified in California for medicinal marijuana." And in anticipation of his encounter with the girl, he had promised to bring "special gummy worms, . . . THC special." These exchanges and the lack of evidence challenging the information's accuracy satisfy the "reasonably reliable" standard of the due process clause of the Utah Constitution. *See Howell*, 707 P.2d at 118.

B.     Relevance

¶17     Akers pled guilty to one count of enticing a minor, one count of dealing in harmful materials to a minor, and one count of possession of a firearm by a restricted person. In exchange, the State dismissed the other six charges, including two counts of possession of a controlled substance. Akers argues that the district court inappropriately considered the THC gummy worms because that information was relevant only to one of the dismissed possession charges and was irrelevant to the charges to which he pled guilty. Like the district court, we disagree.

¶18     District courts have the latitude to consider a wide range of evidence in reaching a sentencing decision. *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). *See also State v. Maestas*, 2012 UT 46, ¶ 290, 299 P.3d 892 ("[A] sentencing body may consider evidence beyond a defendant's conviction when determining an appropriate sentence."). Akers does not cite any authority to support his contention that information automatically becomes irrelevant to a defendant's sentencing on other charges if it relates most directly to dismissed charges. On the contrary, appellate courts have repeatedly rejected the argument that it is an abuse of discretion for a district court to consider dismissed charges when imposing sentence. *See Howell*, 707 P.2d at 118 (holding that dismissed charges of sexual abuse were "[c]learly . . . relevant in sentencing" defendants who pled guilty to physical abuse of their children); *State v. Valdez*, 2017 UT App 185, ¶ 13, 405 P.3d 952 ("[W]e disagree with [the defendant's] specific contention that dismissed or reduced charges are irrelevant or unreliable information regarding the gravity and circumstances of [the defendant's] crime or background."); *State v. Perkins*, 2014 UT App 176, ¶ 6, 332 P.3d 403 (per curiam) (noting that the defendant had not cited any authority supporting his argument that a district court is precluded from considering dismissed charges for sentencing purposes). Indeed, we have treated a district court's comments regarding a

defendant's dismissed charges during sentencing as evidence that it considered all of the legally relevant factors in reaching its decision. *See State v. Williams*, 2006 UT App 420, ¶ 30, 147 P.3d 497. The information regarding the THC gummy worms therefore cannot be deemed irrelevant solely on the basis of its having been the subject of a dismissed charge.

¶19 Although the charge for possession of the THC gummy worms was dismissed as part of a plea negotiation, it still bore relevance to the remaining charges for enticement of a minor and possession of a dangerous weapon by a restricted person. During the course of convincing the girl to meet him in Utah to have sex, Akers told her that he would bring "special gummy worms, . . . THC special." While the district court was not necessarily aware of this promise at the time of sentencing, it was entitled to consider the totality of the circumstances surrounding the charged conduct and make reasonable inferences concerning the charges to which Akers pled guilty.[5] And even absent awareness of the promise to bring the THC gummy worms, it was not unreasonable for the district court to infer that the THC gummy worms were "there for the child."[6]

---

5. Moreover, even if Akers's defense counsel had timely objected to the information about the THC gummy worms in the PSIR, the State undoubtedly would have entered into evidence the messages in which Akers promised to bring the THC gummy worms for the girl.

6. Marijuana products that are designed to resemble commercially available gummy products, such as bears or worms, and other brightly colored candies are by their nature more appealing to children than marijuana in its traditional form. *See* Sean O'Connor & Sam Méndez, *Concerning Cannabis-Infused Edibles: Factors That Attract Children to Foods* 4–8

(continued…)

¶20 The THC gummy worms were also relevant to the possession-of-a-dangerous-weapon-by-a-restricted-person charge. Akers achieved restricted status due to his unlawful possession of a Schedule I or Schedule II controlled substance. *See* Utah Code Ann. § 76-10-503(1)(b)(iv) (LexisNexis 2017) ("A Category II restricted person is a person who . . . is in possession of a dangerous weapon and is knowingly and intentionally in unlawful possession of a Schedule I or II controlled substance."). And THC is a Schedule I controlled substance. *See id.* § 58-37-4(2)(a)(iii)(AA) (Supp. 2018). Even without the presence of methamphetamine, a Schedule II controlled substance, his possession of the THC gummy worms alone was sufficient to qualify him as a Category II restricted person, making the THC gummy worms relevant to the gun possession charge and therefore properly before the court.[7]

---

(…continued)

(Univ. Wash. Sch. Law, Cannabis Law Policy Project, June 28, 2016), https://lcb.wa.gov/publications/Marijuana/Concerning-MJ -Infused-Edibles-Factors-That-Attract-Children.pdf [https://perm a.cc/2JJP-VTSM] (noting that children are attracted to foods that are "red, green, orange, and yellow" in color, shaped like "common candies [and] cookies" and with "sweet, fruity, and candy-like odors").

7. Akers argues that because he lawfully obtained the THC gummy worms for medicinal purposes in California, they could not form the basis for his restricted status in Utah. To support this contention, he cites Utah Code section 58-37-2, which states that a controlled substance does not include "any drug intended for lawful use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human or other animals." Utah Code Ann. § 58-37-2(1)(f)(ii)(B) (LexisNexis 2016). But Akers fails to acknowledge that this provision is

(continued…)

¶21 For these reasons we hold that the information in the PSIR about the THC gummy worms was both reliable and relevant to Akers's sentencing and that the district court did not abuse its discretion in relying on the information when imposing sentence.

## II. Ineffective Assistance of Counsel

¶22 "Implicit in the Sixth Amendment's guarantee of counsel is the right to effective assistance of counsel." *Lafferty v. State*, 2007 UT 73, ¶ 11, 175 P.3d 530. A criminal defendant receives ineffective assistance when (1) "counsel's performance was deficient" and (2) that "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defense counsel does not render deficient performance if counsel refrains from making futile objections. *See Layton City v. Carr*, 2014 UT App 227, ¶ 19, 336 P.3d 587.

¶23 Akers argues that his defense counsel performed deficiently when he did not object to the mention of the THC gummy worms in the PSIR. We disagree, because an objection to the inclusion of that information in the PSIR would have proven unsuccessful.

¶24 Utah Code section 77-18-1(6)(a) states:

---

(…continued)
limited to "ephedrine, pseudoephedrine, norpseudoephedrine, or phenylpropanolamine," that are obtained as an "over-the-counter medication without prescription." *Id.* The limited scope of this statute does not exonerate Akers from being illegally in possession of THC in Utah, in 2017, regardless of whether he lawfully obtained it for medical purposes in California. *See id.* § 58-37-4(2)(a)(iii)(AA) (Supp. 2018) (categorizing THC as a Schedule I controlled substance).

> Any alleged inaccuracies in the presentence investigation report . . . shall be brought to the attention of the sentencing judge, and the judge may grant an additional 10 working days to resolve the alleged inaccuracies of the report with the department. If after 10 working days the inaccuracies cannot be resolved, *the court shall make a determination of relevance and accuracy on the record.*

Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2018) (emphasis added). As such, had Akers's defense counsel raised an objection to the inclusion of the challenged information in the PSIR, the district court would have been required to make a determination of relevance and accuracy of the information on the record. If the court determined the information to be both relevant and accurate, then the information would have remained in the PSIR and defense counsel's objection would have been unsuccessful.

¶25   The information in the PSIR was accurate and relevant. When asked about the THC gummy worms, Akers essentially acknowledged that he was in possession of them at the time of his arrest. Rather than deny their existence, he sought to justify his possession of them by referring to his eligibility in California to use medical marijuana. This explanation and his counsel's statement that the PSIR did not contain any errors strongly support a finding of reliability, which no doubt would have been supported by police testimony and the evidence log, had the State been put to its proof.

¶26   The district court also clearly considered the information to be relevant as it affirmatively represented that the THC gummy worms *significantly* factored into its sentencing decision—and we have determined that it did not abuse its discretion in doing so. *See supra* Part I.B. Akers's defense counsel

therefore did not perform deficiently when he did not raise an objection that would have ultimately proven to be futile.[8]

CONCLUSION

¶27  We conclude that the district court did not abuse its discretion by relying on information relating to the dismissed charges when it sentenced Akers. The information regarding his possession of THC gummy worms that he brought to his expected encounter with the girl was both reliable and relevant. Also, Akers did not receive ineffective assistance from his defense counsel because any objection to the inclusion of that information in the PSIR would have proven unsuccessful.

¶28  Affirmed.

––––––––––

8. Because we conclude that the performance of Akers's defense counsel was not deficient, we do not reach the prejudice prong of the ineffective assistance of counsel inquiry. *See State v. Reid*, 2018 UT App 146, ¶ 19, 427 P.3d 1261 ("A defendant's inability to establish either element defeats a claim for ineffective assistance of counsel.").