2020 UT App 175

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PAUL CHAPMAN WILKES,
Appellant.

Opinion
No. 20190216-CA
Filed December 31, 2020

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 161906760

Sarah J. Carlquist, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Paul Chapman Wilkes appeals his prison sentence, arguing that his counsel was constitutionally ineffective in failing to object to the sentencing court's consideration of a psychosexual evaluation from a previous offense and that the court abused its discretion when it sentenced him to prison instead of probation. We affirm.

BACKGROUND

¶2 In the summer of 2012, Wilkes, age twenty-seven, manipulated NK, who was sixteen, into having sex with him on three occasions in exchange for money and gifts.[1]

¶3 In January 2013, after Wilkes had abused NK but before that abuse was reported, Wilkes sexually abused a different minor, this time a fourteen-year-old girl (SV). Wilkes was charged in that case and pleaded guilty to sexual battery in 2013 (first case). When SV reported the abuse, she provided a statement to police detailing the events. As part of sentencing in the first case, Wilkes underwent a psychosexual evaluation in September 2013. In that evaluation, Wilkes denied that he sexually abused SV. Notably, he also denied that he "ever had sexual contact with anyone under 17 years of age," even though he had committed the (then unreported) sexual abuse of NK about one year before. Because of his denial and his failure to take responsibility for his abuse of SV, the evaluator determined that Wilkes was not sufficiently motivated to participate in sex-offender treatment. The evaluator concluded that before engaging in a sex-offender treatment program, Wilkes would need to participate in a more general course of psychotherapy to address his interpersonal and emotional functioning. Wilkes was sentenced to thirty-six months of probation and ordered to participate in a sex-offender treatment program, which he completed in 2016.

¶4 Three years after being abused by Wilkes, NK disclosed the abuse. The State charged Wilkes with one count of encouraging, inducing, or purposely causing the prostitution of a child, *see* Utah Code Ann. § 76-10-1306(3) (LexisNexis 2012),

---

1. Departing from our usual practice of referring to the victim of abuse as "Victim," we use initials in this opinion at the request of the individual involved.

and three counts of unlawful sexual conduct with a sixteen- or seventeen-year-old, *see id.* § 76-5-401.2. In August 2017, Wilkes pleaded guilty to two counts of unlawful sexual conduct, and the State dismissed the other two charges (second case).

¶5    In its presentence investigation report (PSI), Adult Probation and Parole (AP&P) recommended imprisonment. Wilkes objected to the PSI and moved to continue his sentencing hearing, arguing that the PSI had "numerous errors" and omitted "information which is favorable to him and which would have a bearing on his sentence." Specifically, Wilkes's counsel asserted that "the person who prepared" the PSI had "totally ignore[d]" and "not even mention[ed]" a positive two-page letter from Wilkes's current sex-offender therapist. Wilkes also objected that the PSI "revisit[ed]" the first case and the conclusions of the therapist in that case. The sentencing court denied the request to strike the PSI and order a new report, concluding that "there was nothing inaccurate about the fact that [Wilkes] did enter into treatment with other people" and "ultimately completed the treatment." The court then sentenced Wilkes to concurrent terms of zero to five years.

¶6    Wilkes, represented by a different attorney (Counsel), appealed the sentence, and based on the parties' stipulation, this court remanded to the sentencing court "to resolve the alleged inaccuracies in the [PSI] and to conduct a new sentencing hearing." Due to a retirement, the case was reassigned to a different judge. On remand, the court ordered Wilkes released from prison, vacated his first sentence, ordered a new PSI, and set a new sentencing hearing.[2]

¶7    AP&P prepared a second PSI, again recommending a prison sentence. This PSI included a letter from Wilkes's sex-

---

2. At the time of his release, Wilkes had served approximately ten months in prison.

offender therapist explaining that Wilkes had successfully completed therapy over a period of thirteen months ending in February 2016. The therapist also opined that it was unnecessary for Wilkes to repeat treatment. This PSI included a portion of Wilkes's statement in which he minimized his abuse of NK, stating that he was trying to help relieve her stomach pains when he sexually assaulted her. Wilkes acknowledged that he was placed on probation for a "similar offense" that had occurred in the first case, but he asserted that he was a "changed person" after having completed sex-offender counseling and treatment arising from the first case.

¶8     The second PSI outlined Wilkes's extensive criminal history, including offenses he committed as a juvenile and a felony drug conviction. It also noted that while Wilkes had initially struggled to comply with the conditions of his probation related to the first case, Wilkes had been compliant with the terms of his probation since January 2015.

¶9     The second PSI also included statements from NK, NK's mother, and SV. The mother's and NK's statements detailed the serious psychological and emotional toll Wilkes's abuse had on NK and their family.

¶10    In January 2019, at the second sentencing hearing, the court informed the parties that it had reviewed all the information provided for and considered during Wilkes's first sentencing as well as the more current information that was not available to the original sentencing court. The court specifically stated that it had looked at documents from the first case, including the psychosexual evaluation and "things of that nature" that were available to the original sentencing court, in preparation for the new sentencing hearing. The court explained that "it was important for [it] to look at the [first] case because that's part of the argument, is that [Wilkes] completed probation, that he did well and things of that nature." Counsel stated that

he did not "have a problem with that." The sentencing judge then informed the parties,

> [I]f there are things that I've looked at that you haven't looked at, you ought to look at all those things before . . . sentencing so that if there's anything you want to point out to me as far as a correction or something like that, you should do that . . . . So, I just want to be on the same page with everybody. I've looked at both cases and all the things that were filed in both cases . . . .

¶11 Counsel indicated that he was not familiar with the psychosexual evaluation from the first case. Counsel then began to identify several concerns he had with the second PSI and expressed that he "probably should have filed an objection." In response, the court continued the sentencing hearing to allow Counsel to put "in writing" his "corrections and concerns," to file an objection with the court, and to provide any necessary information to AP&P. The court noted that it wanted "to make sure AP&P addressed these things before the next hearing." Counsel subsequently filed objections to the manner in which Wilkes's criminal history had been scored in the second PSI.

¶12 Before the continued sentencing hearing, which occurred about a month later, Counsel withdrew the objections, explaining that after a conference with AP&P, he was satisfied that the scoring was correct. However, Counsel raised a new concern: Wilkes had also filed a 402 motion to reduce his prior felony drug conviction, and that motion was still pending. *See* Utah Code Ann. § 76-3-402(1) (LexisNexis 2017) (providing that "[i]f at the time of sentencing the court," after having considered various enumerated circumstances, "concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute, the court may enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly"). Counsel argued that if the court granted

the motion, it "may affect [Wilkes's] criminal history calculation." But the court explained that while it had not yet ruled on Wilkes's 402 motion, granting it would not "make a difference" to the outcome of the sentencing hearing because it concerned "a drug charge . . . committed while [Wilkes] was on probation" for the first case.

¶13   At the continued sentencing hearing, Counsel asked the court to "place . . . Wilkes on probation . . . based on what he did prior to being sent to prison [after the initial sentencing], what he has done since his release[,] and based on the chronology of the offenses." Counsel explained that six and a half years had passed since Wilkes sexually abused NK. After that abuse, Wilkes had successfully completed a sex-offender treatment program and probation, was enrolled in college, participated in weekly therapy, had committed no offenses since completing probation, and was the sole caregiver for his grandparents. Noting that Wilkes had already spent ten months in prison before being released after his successful appeal, Counsel focused on the progress Wilkes had made:

> I think the most important factor is that this offense was prior to the previous conviction for which he completed treatment and probation. I think in our system we try and rehabilitate people and we don't rehabilitate them and then go back and put them in prison for a similar prior offense which the rehabilitation dealt with.

¶14   For its part, the State, considering the egregious and predatory nature of the offense, urged the court to impose a prison sentence and "leave it to the Board of Pardons to determine how long" Wilkes would serve.

¶15   In announcing Wilkes's sentence, the court reiterated that it had reviewed "everything in the file," including the risk assessment and letters filed in the case. The court specifically

noted that, as it had previously indicated to the parties, *see supra* ¶ 10, "because there was reference to the [first] case, [it] reviewed everything in the [first] case as well in preparation for [the] hearing." The court acknowledged that Wilkes presented "an unusual situation because it is not often that someone is resentenced after serving a lengthy amount of time at the Utah State Prison." The court recognized that Wilkes had taken positive steps toward rehabilitation, including attending school, serving ten months in prison, completing counseling, being able to pay restitution, and having committed no crimes since he was charged in the second case. However, the court noted that the "seriousness of the offenses in this case . . . cannot be looked at in a vacuum." Rather, "they have to be taken into consideration with the [first] case [and] . . . the statement of [SV] in the [first] case that was included with the [PSI]." The court noted that Wilkes knew his victims were high school girls and that he was "preying on young girls at the time, offering money for sex and things of that nature and those things make the facts of this [second] case serious and aggravating." The court further considered the impact Wilkes's conduct had on NK, specifically identifying the "lasting effect on [her] mental health." The court observed that the perpetrator does not "get to decide when somebody reports" being sexually abused, and the fact that Wilkes had "moved on" did not mean that NK had done the same: "So the impact on her is significant and that's something that should be considered in a sentence."

¶16 The sentencing judge also considered Wilkes's lack of empathy:

> I'm glad that you gave a statement today because I had written in my notes that in everything I read I did not read in one place anything that led me to believe that you had what you learned in treatment as victim empathy. You wrote a statement in the presentence report—and I acknowledge that that presentence report is old but until today, I really

had not read anything anywhere that would convince me that you had any empathy for [NK], and that's something that I'm sure you learn in treatment that part of your rehabilitation includes acknowledging fully everything, not minimizing your responsibility—and I say that because when I read [the psychosexual evaluation from the first case], it struck me that in [that evaluation], in the presentence report, that you minimized your responsibility in the conduct that you engaged in.

¶17 The court further pointed out that even though the psychosexual evaluation from the first case was completed after Wilkes had abused NK—but before the second case had been filed—Wilkes denied in that evaluation "ever having sexual conduct or contact with anyone under the age of 17."

¶18 Finally, the court explained that while rehabilitation is an important consideration in sentencing, "punishment is [also] an important component" that includes "reparations to the victim in a case and to society as a whole." The court informed Wilkes that he "still [had] some reparations left to make in this case" and explained that it was sentencing Wilkes to two concurrent zero-to-five-year prison terms as "the last part of [his] rehabilitation, the last part of [his] reparations . . . that [he had] to complete." Wilkes appeals.

ISSUES AND STANDARDS OF REVIEW

¶19 Wilkes raises two main issues on appeal. First, he contends that Counsel was constitutionally ineffective for not objecting to the sentencing court's consideration of the psychosexual evaluation prepared in the first case, arguing that not objecting allowed the court to "consider[] and rel[y] on unreliable and irrelevant information in making its sentencing determination." "An ineffective assistance of counsel claim

raised for the first time on appeal presents a question of law." *State v. Percival*, 2020 UT App 75, ¶ 19, 464 P.3d 1184 (quotation simplified).

¶20 Second, Wilkes asserts that the court abused its discretion when it sentenced him to prison instead of probation. "We review the district court's sentencing decision, including its decision to grant or deny probation, for abuse of discretion. An abuse of discretion results when the judge fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *State v. Gasper*, 2018 UT App 164, ¶ 16, 436 P.3d 200 (quotation simplified).[3]

## ANALYSIS

### I. Ineffective Assistance

¶21 Wilkes argues that Counsel provided ineffective assistance when he failed "to object to the district court's reliance on" the psychosexual evaluation from the first case, asserting that the evaluation was outdated, unreliable, and irrelevant and prejudiced him. Wilkes argues that had Counsel successfully objected to the court's consideration of the psychosexual evaluation, the court would have given more weight to the letter from his current therapist describing the positive changes he had made and given him a more lenient sentence.

¶22 "Utah courts, in line with the United States Supreme Court, regard sentencing as a critical stage of criminal

---

3. Wilkes also argues that the "cumulative effect of the above described errors caused prejudice." However, "[t]here are no errors to accumulate here, rendering the cumulative error doctrine inapplicable in this case." *See State v. Galindo*, 2019 UT App 171, ¶ 17 n.4, 452 P.3d 519.

proceedings at which a defendant is entitled to the effective assistance of counsel. The right to counsel at sentencing must, therefore, be treated like the right to counsel at other stages of adjudication." *State v. Cabrera*, 2007 UT App 194, ¶ 11, 163 P.3d 707 (quotation simplified).

¶23 To succeed on a claim of ineffective assistance of counsel, Wilkes must demonstrate that Counsel's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Wilkes's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182.

¶24 To show deficient performance, Wilkes must overcome the presumption that Counsel's decision not to object to the court's consideration of the psychosexual evaluation prepared in the first case "falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689. "The court gives trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (quotation simplified). Moreover, deficient performance is not determined in a vacuum; rather, it involves asking whether the strategy Counsel employed was that of a reasonable, competent lawyer in the real-time context of the sentencing hearing. *See State v. Nelson*, 2015 UT 62, ¶ 14, 355 P.3d 1031 (stating that deficient performance is evaluated in the immediate trial context). And "even where a court cannot conceive of a sound strategic reason for counsel's challenged conduct, it does not automatically follow that counsel was deficient. . . . [T]he ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350; *accord State v. Ray*, 2020 UT 12, ¶¶ 34–36, 469 P.3d 871.

¶25    Here, Wilkes asserts that "it constitutes an abuse of discretion for the district court to have relied on" the "outdated, unreliable, and irrelevant [psychosexual evaluation]"; that "no sound trial strategy supported . . . Counsel's decision to not challenge or otherwise object to the district court's reliance on [the psychosexual evaluation]"; and that therefore "Counsel performed deficiently." "In short," Wilkes concludes, "there was only upside in objecting to the district court's reliance" on the psychosexual evaluation. (Quotation simplified.) We are not persuaded by Wilkes's argument.

¶26    Because the psychosexual evaluation could have helped Wilkes, Counsel had "a sound strategic reason" to encourage the district court to consider it. *See State v. Gallegos*, 2020 UT 19, ¶ 56, 463 P.3d 641 ("If an attorney's decisions can be explained by a reasonable trial strategy, the defendant has necessarily failed to show deficient performance."). By allowing the court to consider the psychosexual evaluation, Counsel was able to provide actual support for his argument that Wilkes had made significant progress in addressing the origin of his abusive behavior and had taken steps to positively change his life. In other words, the psychosexual evaluation served as a starting point or benchmark to allow the court to discern the trajectory of Wilkes's progress in responding to sex-offender treatment. As Wilkes argues on appeal, "[i]n essence, [Wilkes's current therapist's] letters show how much had changed with respect to Wilkes, his treatment, and his rehabilitation since 2013 when [the psychologist] issued his [psychosexual evaluation]." Put simply, Counsel could have reasonably concluded that the court needed to consider the psychosexual evaluation to discern Wilkes's arc of progress toward accepting responsibility for his actions and eschewing the thinking and behavior that led him to engage in unlawful sexual activity with minors years earlier.

¶27    Moreover, if the psychosexual evaluation was reliable and relevant, any objection to its consideration during sentencing would have been futile, for it is well-established that courts are

allowed to rely on all relevant and reliable information in sentencing: "When there is evidence in the record showing a sentencing judge's reliance on specific information, we will not consider it improper for a judge to rely on such information if the evidence in question had indicia of reliability and was relevant in sentencing." *State v. Moa*, 2012 UT 28, ¶ 36, 282 P.3d 985 (quotation simplified); *accord State v. Akers*, 2018 UT App 235, ¶ 13, 438 P.3d 70; *State v. Christensen*, 2015 UT App 268, ¶ 3, 362 P.3d 300 (per curiam). Thus, objecting to the court's consideration of a relevant and reliable psychosexual evaluation would be futile, and "[a] futile motion necessarily fails both the deficiency and prejudice prongs of the *Strickland* analysis because it is not unreasonable for counsel to choose not to make a motion that would not have been granted, and forgoing such a motion does not prejudice the outcome." *State v. Makaya*, 2020 UT App 152, ¶ 9, *petition for cert. filed*, Dec. 14, 2020 (No. 20200911).

¶28 Wilkes has not carried his burden to show that a reasonably competent attorney would have objected to the psychosexual evaluation as unreliable or irrelevant. His basic argument is that the psychosexual evaluation was necessarily "outdated, unreliable, and irrelevant to sentencing" because it could not—given the date that it was written—"take into account all of the rehabilitative steps Wilkes had successfully taken prior to sentencing." Wilkes further argues that the psychosexual evaluation "generated nearly six years prior to sentencing in [the second case], was not probative of who Wilkes was at the time of sentencing" because it had been "superseded" by the letter describing his progress from his current therapist. But being six years old does not—standing alone—make information unreliable or irrelevant, and Wilkes points us to no authority supporting such a proposition.[4] Nor has Wilkes

---

4. Wilkes cites *State v. McClendon*, 611 P.2d 728 (Utah 1980), but *McClendon* merely states the unarguably correct principle that

(continued…)

presented any authority to support his argument that newer information "supersedes" older information such that the older information must be disregarded as irrelevant or unreliable.

¶29   To the contrary, the information in the psychosexual evaluation, although dated, remains reliable and relevant. As to reliability, Wilkes makes no claim that the psychosexual evaluation and assessment are inaccurate or were prepared by an unqualified individual. In fact, that evaluation formed the basis for the sex-offender treatment that Wilkes's current therapist points to as having successfully been completed. Further, the evaluation was conducted by a licensed psychologist and approved sex-offender treatment provider with the Utah Department of Corrections.

¶30   Moreover, the psychosexual evaluation prepared for the first case was applicable to Wilkes's sentencing because it contained relevant information from the time period in which Wilkes abused NK. The evaluation was prepared after Wilkes had abused NK but before he was charged in the second case. Yet during the evaluation, Wilkes denied ever having sexual contact with anyone under seventeen years of age, even though he had abused NK a year earlier. The fact that Wilkes denied or minimized his sexual abuse of minors *after* he had been

---

(…continued)
"[a] sentence in a criminal case should be appropriate for the defendant in light of his background and the crime committed and also serve the interests of society which underlie the criminal justice system." *Id.* at 729. It says nothing about the appropriateness of a court's consideration of a previously generated evaluation. Rather, *McClendon* states that a defendant's juvenile court record "may reveal a pattern of law breaking as well as a defendant's response to previous rehabilitative efforts which bear directly upon the appropriateness of the sentence." *Id.*

convicted of unlawful sexual activity with SV and *after* he had sexually abused NK is certainly relevant to his sentencing for unlawful sexual conduct involving NK. That Wilkes downplayed his actions in 2013 around the very time he abused NK cannot help but inform the court's consideration of what sentence he should receive in 2019 for that very abuse. *See State v. Monzon*, 2016 UT App 1, ¶ 13, 365 P.3d 1234 ("Except for constitutional restraints, the [district] court has broad discretion in imposing sentence within the statutory scope. The court must be permitted to consider any and all information that reasonably may bear on the proper sentence for the particular defendant, given the crime committed." (quotation simplified)).

¶31  For the foregoing reasons, we conclude that Wilkes has not proved that Counsel rendered deficient performance in not objecting to the court's consideration of the psychosexual evaluation at sentencing.

## II. Abuse of Discretion

¶32  Wilkes next argues that the court abused its discretion in sentencing him to prison instead of probation. Specifically, Wilkes asserts that the court did not "adequately consider his rehabilitative needs" and that he had already been punished by having spent ten months in prison prior to his initial appeal.[5]

---

5. Wilkes also argues that the court abused its discretion "because it did not adequately consider the impact Wilkes's then-pending 402-reduction motion would have had on his criminal history assessment score." *See supra* ¶ 12. However, the court did consider the potential impact of granting the motion and concluded that it would not make a difference in sentencing. As Wilkes points out in his brief, granting the motion would have reduced his criminal history assessment score by two points, but his reduced score would still place him in the

(continued…)

¶33 "Criminal sentences should be appropriate for the defendant in light of his background and the crime committed and also serve the interests of society which underlie the criminal justice system." *State v. Gasper*, 2018 UT App 164, ¶ 25, 436 P.3d 200 (quotation simplified). "We afford the sentencing court wide latitude and will reverse a sentencing decision only if it is an abuse of the judge's discretion." *State v. Scott*, 2017 UT App 103, ¶ 10, 400 P.3d 1172 (quotation simplified). And "an abuse of discretion results when the judge fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (quotation simplified). "In other words, an abuse of discretion results only if no reasonable person would take the view adopted by the district court." *Gasper*, 2018 UT App 164, ¶ 26 (quotation simplified).

¶34 Moreover, "in considering a sentence, there is no entitlement or right to probation, but rather, granting probation is 'within the complete discretion of the [district] court.'" *State v. Ward*, 2009 UT App 164U, para. 2 (per curiam) (quoting *State v. Rhodes*, 818 P.2d 1048, 1049 (Utah Ct. App. 1991)). "Sentencing . . . necessarily reflects the personal judgment of the court" and involves weighing "the many intangibles of character, personality, and attitude, of which the cold record gives little inkling." *State v. Duran*, 2011 UT App 319, ¶ 2, 263 P.3d 538. (quotation simplified). "A sentencing court is empowered to place a defendant on probation if it will best serve the ends of justice and is compatible with the public interest." *State v. Cline*, 2017 UT App 50, ¶ 7, 397 P.3d 652 (quotation

_____

(…continued)

presumptive imprisonment category on the sentencing matrix. And as we explain, "the fact that the [district] court assessed the relevant factors differently than [Wilkes] would have liked does not indicate that it exceeded its discretion." *See State v. Bunker*, 2015 UT App 255, ¶ 5, 361 P.3d 155 (quotation simplified).

simplified). Consequently, "the decision of whether to grant probation must of necessity rest within the discretion of the judge who hears the case." *State v. Legg*, 2018 UT 12, ¶ 34, 417 P.3d 592.

¶35   Wilkes's complaint essentially boils down to the assertion that the court "did not adequately consider [his] rehabilitative needs when it sentenced him to prison." But Wilkes must set forth more than mere disagreement with how the court weighed mitigating and aggravating factors to show that the court abused its discretion in imposing his sentence. After all, "not all aggravating and mitigating factors are equally important, and one factor in mitigation or aggravation may weigh more than several factors on the opposite scale." *Cline*, 2017 UT App 50, ¶ 7 (quotation simplified). "Ultimately, [Wilkes] can show an abuse of discretion in the district court's weighing of the relevant factors only by demonstrating that no reasonable person would take the view taken by the sentencing court." *See State v. Wood*, 2018 UT App 98, ¶ 12, 427 P.3d 452 (quotation simplified).

¶36   And Wilkes cannot demonstrate that the court sentenced him in an unreasonable fashion. As an initial matter, we note that the court followed AP&P's sentencing recommendation, suggesting that the court's weighing of the factors in sentencing was not a view that "no reasonable person would take." *See id.* (quotation simplified); *see also Rita v. United States*, 551 U.S. 338, 347 (2007) (explaining that when a sentencing commission and a sentencing judge "have reached the same conclusion as to the proper sentence in the particular case[,] that double determination significantly increases the likelihood that the sentence is a reasonable one" (quotation simplified)). More specifically, the court considered the second PSI, which recounted Wilkes's extensive criminal history; the predatory nature of the sexual abuse he inflicted on NK; Wilkes's minimization of his sexually abusive conduct toward minors; his denial that he had sexual contact with anyone under seventeen after he had abused NK; his longstanding lack of victim

empathy; and the impact of his abusive behavior on NK. On the other hand, the court considered mitigating factors, specifically that Wilkes had attended school, had already served approximately ten months in prison, had completed treatment, had demonstrated the ability to pay restitution, and had committed no crimes since he was charged in the second case. Ultimately, after having balanced these factors, the court decided that the aggravating factors outweighed the mitigating factors and sentenced Wilkes to prison rather than probation. Thus, in the final analysis, Wilkes merely disagrees with the court's sentencing decision, but he has not demonstrated that the court abused its discretion in imposing a prison sentence. *See State v. Alvarez*, 2017 UT App 145, ¶ 6, 402 P.3d 191 ("[D]isagreement with how the sentencing court weighed aggravating and mitigating factors . . . is insufficient to demonstrate an abuse of discretion.").

¶37   Wilkes also asserts that the "court overemphasized the importance of punishment." But a review of the court's statements in this regard indicates otherwise. Rather than emphasizing punishment, the court stated that punishment plays an important role in providing reparation to victims and society and that Wilkes "still [had] some reparations left to make in this case." And Wilkes fails to acknowledge that it is well-established that "rehabilitation is not the only factor the trial court may consider when making a sentencing determination. Other factors include deterrence, punishment, restitution, and incapacitation." *State v. Rhodes*, 818 P.2d 1048, 1051 (Utah Ct. App. 1991); *accord State v. Sotolongo*, 2003 UT App 214, ¶ 5, 73 P.3d 991; *State v. Tompkins*, 2002 UT App 344U, para. 2. Thus, we are satisfied that the district court acted appropriately in considering the reparative aspect of punishment in this context.

¶38   Because Wilkes has shown nothing more than mere disagreement with the weighing of the evidence presented in sentencing, we conclude that the court did not abuse its discretion in sentencing Wilkes to prison instead of probation.

CONCLUSION

¶39   Counsel did not render ineffective assistance by not objecting to the court's appropriate consideration of the psychosexual evaluation prepared for the first case, because there was a sound tactical reason to rely on the information the evaluation contained and because it was reasonable for Counsel to view the evaluation as relevant and reliable. And because the court was permitted to consider and weigh factors beyond Wilkes's rehabilitative needs during sentencing, it did not abuse its discretion by denying probation and imposing a prison sentence.

¶40   Affirmed.

—————