**2016 UT App 1**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ALBERTO MONZON,
Appellant.

Memorandum Decision
No. 20141007-CA
Filed January 7, 2016

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 141900541

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes, Cherise M. Bacalski, and Deborah L.
Bulkeley, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY
concurred.

CHRISTIANSEN, Judge:

¶1     Alberto Monzon pled guilty to one count of possession
with intent to distribute a controlled substance, a second degree
felony. The district court sentenced Monzon to an indeterminate
prison term of one to fifteen years. Monzon does not contest his
conviction, but he appeals his sentence. We affirm.

¶2     In 2014, the State charged Monzon with possession of a
controlled substance with intent to distribute after he was caught
transporting five pounds of methamphetamine from Arizona to
Utah. Monzon pled guilty as charged in exchange for the State's
promise to not refer Monzon's case to federal prosecutors, who

would pursue prosecution of Monzon's case under federal law.[1] The State did not agree to any sentencing recommendation.

¶3     Prior to sentencing, Adult Probation and Parole (AP&P) prepared a presentence investigation report (the PSI Report), wherein it recommended that Monzon serve 180 days in jail, followed by one year of probation. Although the sentencing matrix recommended only sixty days in jail,[2] AP&P urged, in its PSI Report, that the court impose a longer jail term of at least 180 days because of the large "amount of drugs (five pounds) [Monzon] had transported to this state" and to deliver a message to Monzon and others "that a heavy price will be paid, and not just a slap on the hand for transporting drugs for 'Narco traffickers.'" In addition, fifteen of Monzon's family members, friends, and employers sent letters to the district court regarding Monzon's character and seeking leniency for Monzon at sentencing.

---

1. If Monzon had been charged and convicted under federal law, the federal minimum sentence is no less than five years in prison for trafficking 5–49 grams of pure methamphetamine or 50–499 grams of a mixture, or no less than ten years for trafficking 50 grams or more of pure methamphetamine or 500 grams or more of a mixture. *See Federal Trafficking Penalties*, Drug Enforcement Administration, http://www.dea.gov/druginfo/ftp3.shtml [https://perma.cc/BJ8U-S2DB]. Five hundred grams of methamphetamine equates to about 1.1 pounds. Monzon was caught trafficking five pounds—approximately 2,268 grams—of methamphetamine.

2. The Utah Sentencing Commission's general matrix compares a defendant's criminal history assessment score with the degree of the offense of which he has been convicted. *State v. Harvey*, 2015 UT App 92, ¶ 3, 348 P.3d 1199. The matrix creates a starting point for sentencing judges by reflecting a recommendation for a typical case. *Id.*

¶4    At Monzon's first sentencing hearing, his defense counsel asked the district court to sentence Monzon to sixty days in jail in accordance with the sentencing matrix's recommended length of incarceration. In support of her argument for this sentence, defense counsel highlighted Monzon's "lack of criminal history, his great employment and family relationships and things of [that] nature that would help to counteract sort of the aggravating factor of the amount of methamphetamine." The State asked the district court to sentence Monzon to prison because of the large amount of methamphetamine he had trafficked. The State noted that had the case "gone federal, and our agreement was to not send this federal, imagine the amount of time he would be doing for five pounds of methamphetamine" if convicted in the federal court. The State agreed with the district court that the plea agreement was "sort of a sentencing compromise." The district court ultimately continued the sentencing hearing for one week to consider the parties' differing recommendations.

¶5    At Monzon's second sentencing hearing, the district court stated that although it usually trusted AP&P's sentencing recommendations, it strongly disagreed with AP&P's recommendation in this case. The court then asked Monzon, "Tell me why I shouldn't sentence you to prison on this because of the severity of the crime you committed?" Monzon answered that he had "desperately need[ed] money" and that he was "just trying to get a little bit [of] money for my baby we just had and we just, you know, we were tight on bills."

¶6    The district court noted that it was "puzzling" that AP&P "wouldn't see the circumstances being more aggravating" given the quantity of methamphetamine involved and the impact such a large quantity could have had on the community. The court further addressed Monzon's statement that he needed money to support his family, noting that "there are a lot of people who need money and what they do is they go out and get very very difficult very physically challenging jobs that don't pay a lot, but they'll go out and get two and three jobs if they have to. . . .

They'll do whatever they can to support their family and not break the law."

¶7     The district court then sentenced Monzon to a prison term of one to fifteen years, with credit for time served. Monzon appeals, contending that the district court abused its discretion in sentencing him to prison.

¶8     We review the district court's sentencing decision for an abuse of discretion. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167. A court abuses its discretion in sentencing "when [it] fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *Id.* (citation and internal quotation marks omitted). "An appellate court may only find abuse if it can be said that no reasonable [person] would take the view adopted by the [district] court." *Id.* (first alteration in original) (citation and internal quotation marks omitted).

¶9     Monzon concedes that the sentence he received was "within legislative guidelines" but argues that the district court abused its discretion in three ways when it sentenced him to prison. First, Monzon contends that the district court "treated the fact that [he] possessed five pounds of methamphetamine as the *de facto* reason for imposing a prison sentence," when, in his view, the court should not have considered the quantity of methamphetamine in its sentencing decision at all. Second, he contends that "[t]he State . . . improperly argued that because it could have referred the case for federal prosecution and did not, that the court was somehow obligated to impose a harsh sentence." Third, he contends that the court "failed to consider the substantial evidence in mitigation."

¶10     As to Monzon's contention that the district court should not have considered the quantity of methamphetamine in his possession, he argues that "[p]ossession of five pounds of a drug does not merit a [harsher] sentence than a smaller quantity when the legislature has not expressed the intent to treat larger quantities differently." He argues that Utah Code section

58-37-8's silence regarding the quantity of drugs possessed by a defendant indicates that the Utah Legislature has not "opted to treat a possession with the intent to distribute differently if the quantity of drugs is greater."[3] He then asserts, without citation, that the absence of an explicit quantity-based sentencing differential means that Utah has "determined that a sentence should not be aggravated based on the quantity of drugs possessed."

¶11 We cannot agree that the legislature has made such a determination. The statute's silence on this subject is equally consistent with a desire to leave the ultimate sentencing decision in drug trafficking cases such as this to the district court. As this court has noted, the district court's "exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court." *State v. Moreau*, 2011 UT App 109, ¶ 6, 255 P.3d 689 (alteration in original) (citation and internal quotation marks omitted).

¶12 In any event, Monzon's sentence was neither aggravated nor enhanced. He was sentenced to the statutory "term of not less than one year nor more than 15 years" for committing a second degree felony. *See* Utah Code Ann. § 76-3-203(2) (LexisNexis 2012). Although the sentencing matrix used by AP&P recommended sixty days in jail, sentencing matrices are advisory and "do not create any right or expectation on behalf of the offender." *See* 2013 Adult Sentencing and Release Guidelines 11, Utah Sentencing Commission (2013),

---

3. Section 58-37-8 of the Utah Code references the quantity of drugs as it relates to marijuana, but not methamphetamine. *See* Utah Code Ann. § 58-37-8(2)(b)(i) (LexisNexis 2012) ("Any person convicted of violating Subsection (2)(a)(i) with respect to . . . marijuana, if the amount is 100 pounds or more, is guilty of a second degree felony . . . .").

http://www.sentencing.utah.gov/Guidelines/Adult/2013%20Adult%20Sentencing%20and%20Release%20Guidelines.final.combined.pdf [https://perma.cc/9DZC-GK5Y]. And although AP&P ultimately recommended 180 days in jail and one year of probation, a district court is not bound by the sentencing recommendations of AP&P. *See* Utah R. Crim. P. 11(h)(2) ("[A]ny recommendation as to sentence is not binding on the court."); *see also State v. Wanlass*, 953 P.2d 1147, 1148–49 (Utah Ct. App. 1998) (per curiam); *State v. Houk*, 906 P.2d 907, 909 (Utah Ct. App. 1995) (per curiam).

¶13     "Except for . . . constitutional restraints, the trial court has broad discretion in imposing sentence within the statutory scope. [The court] 'must be permitted to consider any and all information that reasonably may bear on the proper sentence for the particular defendant, given the crime committed.'" *State v. Sanwick*, 713 P.2d 707, 708 (Utah 1986) (per curiam) (quoting *Wasman v. United States*, 468 U.S. 559, 563 (1984)). Moreover, this court has recognized that where "sentences are within the statutory limits, they cannot be considered clearly excessive." *Moreau*, 2011 UT App 109, ¶ 9; *see also State v. Russell*, 791 P.2d 188, 193 (Utah 1990) (concluding that a sentence was not "clearly excessive" because it "did not exceed that prescribed by law"); *cf. Dorszynski v. United States*, 418 U.S. 424, 431 (1974) (recognizing that so long as "a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end"). Certainly, the large quantity of methamphetamine Monzon was transporting for eventual sale in Utah and the potential harm that would result from its distribution are legitimate sentencing considerations. It follows that the court's commentary on the quantity of methamphetamine trafficked by Monzon did not convert an otherwise appropriate sentence into one constituting an abuse of discretion.

¶14     Monzon's second contention is that the State breached the plea agreement and that the district court abused its discretion because it "improperly considered the State's charging decision

in order to aggravate the sentence." We first address Monzon's argument that the State breached the plea agreement.

¶15    Monzon contends that the State breached the plea agreement by "asking the court to impose a more serious sanction based on its own agreement—to not file more serious charges." Monzon relies on "one, highly improper" statement made by the prosecutor representing the State during Monzon's second sentencing hearing:

> Frankly, if the Court sends him—gives him 180 days, that's all the more incentive why the State would not bring major drug cases through here. If this case was taken federal, he would be doing a minimum mandatory at least of five years, at least and maybe more. And, again, he's indicated to you his motivation. You know this isn't somebody who is struggling with a drug addiction. This is somebody who simply picked up five pounds in Arizona and drove it up here and got caught.
>
>      I just think that there's a message that is sent to the community. And the message if you send him to jail or you put him on probation is hey take your chance. If you get caught, you're going to do a little jail time and then we're going to put you on probation. [That] just isn't an adequate deterrent for this type of offense.

Monzon argues that the prosecutor's statement constituted a breach of the plea agreement and that it was improper because it "told the court that if it complied with [AP&P's] recommendation, [the State] would not bring cases through State courts."

¶16    We agree with Monzon that the prosecutor's statement was, in part, an improper attempt to influence the district court's sentencing decision with an irrelevant argument. However, in

the plea agreement, the State agreed only "not to refer [the] case federally," and the State kept that promise.[4] Although Monzon contends that the prosecutor's statement at sentencing "was entirely inconsistent with [the State's] agreement to reduce [Monzon's] potential liability," that agreement did not constrain the State's ability to recommend any sentence, including a prison sentence. Consequently, the State did not breach the plea agreement by recommending prison time.

¶17    Monzon also contends that the district court relied on the prosecutor's improper statement in sentencing him to prison. To show that a district court relied on irrelevant information at sentencing, a defendant must show "(1) evidence of reliance, such as an affirmative representation in the record that the judge actually relied on the specific information in reaching her decision, and (2) that the information [the judge] relied upon was irrelevant." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985. "[A]n appellate court cannot presume there is evidence of reliance from a silent record or mere introduction of potentially irrelevant information." *Id.*

¶18    According to Monzon, the district court relied on the prosecutor's statement, as evidenced by its declaration during the second sentencing hearing:

> If you choose to go back in that lifestyle and do the same thing, then you run the risk of next time perhaps in a different state they won't take the view that this prosecutor's office took and they will take you federally where you'll do significantly much more time than you'll do, I think, in this case. So I think the break that you got was they didn't take you federally, but I do think a prison recommendation is appropriate.

---

4. Monzon concedes that "the prosecutor did, in fact, not refer the charges federally."

Monzon argues that the district court's declaration demonstrates that "the court determined that Mr. Monzon got a 'break' from the State's failure to refer the charge and that as a result, he deserved a harsher sentence [in] this case."

¶19 We do not agree with Monzon that the district court's declaration indicates that the court was influenced by the prosecutor's statement in sentencing Monzon to prison. To the contrary, we read the district court's words to Monzon as an acknowledgment of the benefit that Monzon received from the State's agreement to not refer the charges federally. Moreover, the record indicates that the prosecutor's statement had no effect on the district court's sentencing decision; the court made the complained-of declaration *after* it had already sentenced Monzon to prison. And the district court in no way indicated that it viewed the prosecutor's statement as a reason to impose a harsher sentence upon Monzon.

¶20 Thus, although we agree with Monzon that the prosecutor's statement was inappropriate, Monzon has failed to demonstrate that the district court relied on it in sentencing him to prison. "Because evidence of reliance must be more than the mere presentation of potentially irrelevant information," *Moa*, 2012 UT 28, ¶ 40, we reject Monzon's argument on this point.

¶21 Third, Monzon argues that the district court abused its discretion when it "failed to consider the substantial evidence in mitigation, including the lack of criminal history, strong employment record, family support and impact incarceration would have on [Monzon's] wife and children." As a general rule, Utah courts "presume that the district court made all the necessary considerations when making a sentencing decision." *Moa*, 2012 UT 28, ¶ 35. Moreover, Utah courts "traditionally afford[] trial courts wide latitude and discretion in sentencing, recognizing that they are best situated to weigh the many intangibles of character, personality and attitude, of which the cold record gives little inkling." *State v. Killpack*, 2008 UT 49,

¶ 58, 191 P.3d 17 (citations and internal quotation marks omitted).

¶22    Here, the record demonstrates that the district court considered all relevant circumstances before imposing sentence. To begin with, during Monzon's first sentencing hearing, defense counsel highlighted several mitigating circumstances, including Monzon's lack of criminal history,[5] the fact that "he's noted as a low risk," the fact that he had been continuously employed, and "his great employment and family relationships and things of [that] nature that would help to counteract sort of the aggravating factor of the amount of methamphetamine." The PSI Report also addressed these factors and further stated that Monzon "was extremely cooperative and willing to aid in this case to include testifying against the co-defendants." Additionally, the district court received fifteen letters of support from Monzon's family members, friends, and employers, all urging the court to be lenient in its sentencing decision. These letters addressed, among other things, Monzon's volunteer work, his work ethic, his relationships with his wife and children, the fact that he was the sole financial provider for his family, his honesty, and the negative effects that a prison environment could have on Monzon. And at the conclusion of the first sentencing hearing, the district court continued sentencing for a week "to think about it" and "consider where it is that [Monzon] ought to be" in light of the differing

_____

5. The State notes that the PSI Report includes one aggravating circumstance—"[e]stablished instances of repetitive criminal conduct"—but that this alleged aggravating circumstance was not discussed at either sentencing hearing. Rather, defense counsel represented to the district court that Monzon "has no criminal history whatsoever." Somewhat inconsistently, the PSI Report also states that "[t]he current offense is [Monzon's] first contact with the criminal justice system." Nonetheless, there is no indication in the record that the district court believed Monzon had a prior criminal record.

recommendations by defense counsel, AP&P, and the State. Because the mitigating evidence that Monzon believes the district court should have considered was discussed during the first sentencing hearing, or was set forth in the PSI Report or in Monzon's letters of support, we presume that the district court considered that information prior to sentencing. *See State v. Finchum*, 2012 UT App 331, ¶ 4, 290 P.3d 938 (per curiam).

¶23 Nevertheless, Monzon contends that "[t]here is not a single statement in the record to show the court considered the impact incarceration would have on Mr. Monzon's family, despite the claim from numerous individuals that a prison commitment would seriously jeopardize not only his relationship with his wife and children, but his ability to support and take care of them." However, Monzon's letters of support discussed the impact of Monzon's incarceration on his family. And even though the district court did not specifically address the issue on the record, "we do not require that sentencing judges articulate or acknowledge the factors they consider in imposing sentences." *Moa*, 2012 UT 28, ¶ 41. Accordingly, we reject this argument.

¶24 Moreover, the district court alluded to two aggravating circumstances that apparently, in its opinion, outweighed the mitigating circumstances highlighted by defense counsel. *See Killpack*, 2008 UT 49, ¶ 59 ("[S]everal mitigating circumstances claimed by a defendant may be outweighed by a few egregious aggravating factors."). First, the district court was clearly troubled by the amount of methamphetamine that Monzon had transported: "I mean five pounds of methamphetamine. It's like you can't even wrap your mind around that one when you start thinking how that breaks down and when they use a cutting agent and what that transfers to in terms of how far that spreads into our community." Second, the court placed particular emphasis on the fact that Monzon had so readily turned to crime to support his family, noting that "there are a lot of people who need money and what they do is they go out and get very very difficult very physically challenging jobs that don't pay a lot, but

they'll go out and get two and three jobs if they have to. . . . They'll do whatever they can to support their family and not break the law." Monzon, on the other hand, "was motivated by simple gain or greed," and he was willing to transport five pounds of methamphetamine without regard to the "ripple effect" of his actions.

¶25 "An appellate court may only find abuse [of discretion in sentencing] if it can be said that no reasonable [person] would take the view adopted by the [district] court." *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167 (second alteration in original) (citation and internal quotation marks omitted). Here, Monzon has failed to demonstrate that no reasonable person would have imposed the sentence that was imposed in this case. *See id.* The record indicates that the district court considered all of the relevant mitigating and aggravating factors in imposing sentence, and Monzon's sentence is within statutory limits. Accordingly, we conclude that the district court did not abuse its discretion in sentencing Monzon to one to fifteen years in prison.

¶26 Finally, Monzon contends that defense counsel was ineffective for failing "to argue the specific issues raised in [Monzon's brief on appeal], such as the evidence in mitigation, the effect incarceration would have on [his] children and that prison would not benefit Mr. Monzon," and when she "failed to object to the prosecutor's improper comments."

¶27 "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. To prove ineffective assistance of counsel, Monzon must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because both deficient performance and resulting prejudice are requisite elements of an ineffective assistance of counsel claim, a failure to prove either element defeats the claim." *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769.

¶28    As explained above, the record suggests that the district court considered the mitigating evidence Monzon highlights on appeal. *See supra* ¶¶ 22–23. In addition, we have already concluded that the prosecutor's statement, while inappropriate, did not amount to a breach of the plea agreement, and there is no indication that the district court relied on the prosecutor's statement in imposing sentence. *See supra* ¶¶ 16, 19. Therefore, any objection by defense counsel to the alleged errors would have been futile, and the "[f]ailure to raise futile objections does not constitute ineffective assistance of counsel." *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Consequently, Monzon's ineffective-assistance claim necessarily fails.

¶29    Affirmed.

―――――――――