**2025 UT App 148**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROGER DEAN RYNHART,
Appellant.

Opinion
No. 20230262-CA
Filed October 17, 2025

Second District Court, Ogden Department
The Honorable Scott M. Hadley
The Honorable Camille L. Neider
No. 071900923

Roger Dean Rynhart, Appellant Pro Se

Derek E. Brown and Michael Palumbo,
Attorneys for Appellee

Pace Johnson, Attorney for Amicus Curiae
Pace Johnson Law Group

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES RYAN D. TENNEY and JOHN D. LUTHY concurred.

HARRIS, Judge:

¶1 Roger Dean Rynhart pled guilty to seven felony crimes, including attempted rape of a child, and was sentenced to prison. He now appeals his sentence, and he raises five claims of error, including a due process challenge, claims of ineffective assistance of counsel, and an assertion that the State should be equitably estopped from denying probation based on purported representations made by Rynhart's defense counsel. We reject Rynhart's arguments and affirm his sentence.

BACKGROUND[1]

¶2　In 2006, Rynhart's girlfriend (Mother) found sexually explicit emails on her computer that she believed Rynhart had sent to her ten-year-old daughter, Mindy.[2] Mother then reported to law enforcement that she believed Rynhart had sexually abused Mindy. Mother also reported that, two years earlier, she had found sexually explicit photographs of Rynhart and Mindy that had been taken on a digital camera, but she indicated that she did not report the photographs at that time because she had been "in denial." The explicit photographs of Mindy "appeared to have been taken without [Mindy's] consent," and some of the photographs contained images of both Mindy and "the genitals of an adult male" whom Mother identified as Rynhart.

¶3　Mother's report prompted an investigation, and Mindy was interviewed at the Children's Justice Center a few days later. The interviewer later reported that, during the interview, Mindy stated that she had "7 or 8 incidents of sexual encounters" with Rynhart, including "vaginal penetration, oral sex[,] and masturbation," starting in April 2006. As the investigation continued, officers searched Rynhart's electronic devices and found explicit photographs of Mindy. Rynhart eventually admitted to touching Mindy on "the top of [her] vagina," engaging in oral sex with her, and taking the sexually explicit photographs of her, among other things.

---

1. Because Rynhart entered into a plea agreement with the State, there was no trial and resulting transcript. The facts recited here come from the charging document, the plea agreement form, the plea hearing, the presentence investigation report, and the sentencing hearing. *See, e.g.*, *State v. Hintze*, 2025 UT 3, n.1, 567 P.3d 506; *State v. Mooers*, 2018 UT App 74, ¶ 2 n.2, 424 P.3d 1126.

2. A pseudonym.

¶4 The State charged Rynhart with two counts of rape of a child, one count of aggravated sexual abuse of a child, and one count of sodomy upon a child, all first-degree felonies, as well as five second-degree-felony counts of sexual exploitation of a minor. The dates of these offenses, according to the charging document, spanned approximately one month.

¶5 In September 2008, Rynhart accepted a plea offer from the State. Under the arrangement, he agreed to plead guilty to one count of *attempted* rape of a child and one count of *attempted* aggravated sexual abuse of a child—counts that had been amended down from the original counts but were still first-degree felonies—as well as all five counts of sexual exploitation of a minor, as originally charged. In exchange, the State agreed to dismiss the other two first-degree-felony counts. In a written statement accompanying his plea, Rynhart acknowledged that he could receive "the maximum sentence that may be imposed for each crime to which" he pled guilty and that his "sentence may include a prison term, fine, or both." At the time, attempted rape of a child and attempted aggravated sexual abuse of a child were each punishable by a term of three years to life in prison, and sexual exploitation of a minor was punishable by a prison term of one to fifteen years. *See* Utah Code §§ 76-5-402.1(2), -404.1(5), 76-5a-3, 76-4-102(2)(c), 76-3-203(2) (2006). Rynhart also acknowledged that his guilty plea was "the result of a plea bargain" with the State and that "[a]ll the promises, duties and provisions of the plea bargain, if any, [were] fully contained in [the] statement." He further acknowledged, that "if there is more than one crime involved, the sentence[s] may be imposed one after the other (consecutively)."

¶6 During the plea hearing, the district court engaged in a colloquy with Rynhart about the punishment he could face if he pled guilty. Defense counsel (Counsel) stated that he had explained to Rynhart that attempted rape "carries at least three years to life" as a "minimum mandatory prison time." And

Rynhart confirmed he understood "that even though there may be a recommendation that the penalties be less" than the maximum potential sentences, the court "could ignore that recommendation" and sentence Rynhart "up to the maximum and run [the sentences] consecutive[ly]." When the court asked whether any "promises" had been made "in connection with" his guilty plea, Rynhart answered in the negative.

¶7    After the plea hearing, Adult Probation and Parole prepared a presentence investigation report (the PSR), which recommended that the district court sentence Rynhart to prison. Specifically, the PSR recommended that Rynhart "serve one term of 25–life, one term of 15–life, and three terms of 1–15 years in prison." In support of this recommendation, the PSR provided an evaluative assessment, which asserted that Rynhart was "in denial and [was] blaming the 10-year-old [Mindy] for initiating all of the sexual encounters" and had "shown absolutely no remorse or comprehension of the deep [psychological] damage" Mindy experienced. The PSR included Rynhart's statements from his presentence investigation interview: that he "only touched [Mindy] once," that "there was no physical evidence" after Mindy's medical exam, and that "the police couldn't find the pictures." In his statement made for purposes of the PSR, Rynhart denied initiating the sexual encounters with Mindy, stating that he "never . . . initiated the [first] sexual contact with any girl that [he] . . . ever had sexual contact with, ever[,] including [Mindy]."

¶8    The PSR also included a criminal history assessment. Such assessments create "a starting point for sentencing judges," *State v. Monzon*, 2016 UT App 1, ¶ 3 n.2, 365 P.3d 1234, by implementing the Utah Sentencing Commission's general matrix form to a specific case. The matrix included in Rynhart's PSR (the Sentencing Matrix) generated a score of seven points based on Rynhart's criminal history. One point was added for "prior misdemeanor convictions," based on a class C misdemeanor conviction Rynhart received in 2004 for maintaining a nuisance on

a property. Another point was added for "prior supervision," because Rynhart had been placed on court-supervised probation in the misdemeanor case. And Rynhart received an additional point for "supervision risk," because he apparently had trouble completing that court-supervised probation. The most points, however, were tallied under the "time range" category for "number of years [Rynhart had] been offending sexually." Rynhart received four points there for offending for "two years or over"; these points were apparently added because Rynhart had taken explicit photographs of Mindy two years before he was charged. All together, his total of seven points placed him in the highest class for criminal history (Class III) in the Sentencing Matrix, and his first-degree felonies were categorized in the highest class of crime (Crime Category A). The result was a recommended prison sentence of twenty-one years for the attempted rape and attempted aggravated sexual abuse of a child convictions, and sixty-four months for the sexual exploitation of a minor convictions.

¶9 During the week before sentencing, Counsel received a copy of the PSR. At the sentencing hearing, which took place in November 2008, the district court began by asking Counsel whether the suggested mandatory minimum sentences in the PSR were correct. Counsel replied, "We went through that downstairs," and he clarified that Rynhart had committed the crimes before passage of a statutory amendment that increased the penalty for attempted rape of a child, and that, as a result, the PSR should have specified "3-to-life" as the mandatory minimum "under the old statute" (instead of fifteen to life or twenty-five to life). Counsel stated that he was "hoping [the court] would ignore the prison [sentence recommendation] and go with something else." But he clarified that "we knew when we pled this out that it was [going to] be prison, and it was [going to] be three years to life on the first two counts." The court acknowledged that the PSR mandatory-minimum recommendations were erroneous, and it asked Counsel whether Rynhart was "willing to go forward with

the presentence report being in error, but noting the corrections"; Counsel stated that Rynhart was ready to proceed.

¶10 Counsel then addressed the criminal history assessment of the PSR, arguing that "the only prior" Rynhart had was "maintaining a nuisance," which Counsel characterized as "something like maintaining a junkyard" on his property. Turning to the convictions at hand, Counsel stated that Rynhart "doesn't deny that he engaged in inappropriate behavior," but that Rynhart wanted "the court to know that he . . . believes that . . . [Mindy] came to him, basically." Rynhart then offered his own direct statement to the court in which he apologized "for what [he] did" but added that he "did not go out looking for this." Counsel then pointed out that the crimes were "all from one time period . . . a single episode . . . as a single, criminal information," and he urged the court to run the sentences concurrently.

¶11 Mindy's father also addressed the court, detailing the trauma Mindy had suffered because of Rynhart's actions. The State followed by arguing that Rynhart should serve consecutive prison terms "given the tender age of the victim" and the "seriousness of what happened." The State further argued that Rynhart had "not taken full responsibility for what happened" and that he was "trying to blame a 10-year-old girl for these acts."

¶12 At the conclusion of the hearing, the court sentenced Rynhart to three years to life in prison on the attempted rape and attempted aggravated sexual abuse counts, and one to fifteen years for each of the sexual exploitation of a minor counts. The court ordered all of those sentences to run consecutively, explaining that it was concerned that Rynhart was not taking responsibility for his actions. The court offered its view that "a 10-year-old's coming on to" Rynhart was "not only at odds with her own statement, but . . . at odds with common sense." The court further explained that a "10-year-old isn't capable of making that type of a decision and [Rynhart], as an adult, and frankly a highly

educated adult, knows that." "[F]or that reason," the court continued, "and for the length of time that these events occurred over, and the number of incidents, . . . consecutive sentencing is appropriate." At the time, Rynhart did not appeal the court's sentencing order.

¶13 Later, in 2011 while serving his prison sentence, Rynhart had a parole hearing during which the Board of Pardons and Parole made an adjustment to the "time range" part of the Sentencing Matrix. Per the sentencing guidelines, four points should only be assigned "[i]f the offender has any sex offense conviction over two years old," whereas only one point is assigned for the "present offense." *See* Utah Sent'g Comm'n, *2008 Adult Sentencing and Release Guidelines* 14 (2008), https://justice.utah.gov/wp-content/uploads/AdultGuidelineManual2008.pdf [https://perma.cc/6NPB-YETL] [hereinafter 2008 Sentencing Guidelines]. And the guidelines instructed that the "date of conviction is determinative for purposes of this section." *Id.* Thus, the Board of Pardons and Parole reduced Rynhart's time range assessment from "two years or over" to "one-time incident," resulting in a three-point reduction in the Sentencing Matrix, leaving him with a total of four points.

¶14 After that, Rynhart's case lay dormant for years. But in 2020, Rynhart filed a motion invoking rule 22 of the Utah Rules of Criminal Procedure, asking the district court to correct his sentence. In that motion, he argued that errors in the PSR and the Sentencing Matrix had prejudiced him at his sentencing hearing and that Counsel had failed to provide adequate representation in various respects. Rynhart also argued that his three-years-to-life sentences were "highly ambiguous" and "internally contradictory." No response or objection to this motion was filed by the State, nor did Rynhart ever file a request to submit this motion to the district court for a decision, as required. *See* Utah R.

Crim. P. 12(b). As a result, it appears that Rynhart's rule 22 motion remains pending in the district court.[3]

¶15    Around the same time, Rynhart also filed a motion under rule 4(f) of the Utah Rules of Appellate Procedure asking the district court to reinstate his time to file an appeal of his sentence. Rynhart argued that neither the district court nor Counsel ever informed him of his right to appeal his sentence. *See* Utah R. App. P. 4(f) (providing a mechanism for criminal defendants, in some circumstances, to obtain reinstatement of their time "for filing a direct appeal"). The court granted that motion, and Rynhart (proceeding pro se) timely filed a notice of appeal.

ISSUES AND STANDARDS OF REVIEW

¶16    In his appeal, Rynhart challenges his prison sentence under several legal theories. First, he argues that the statute governing presentence investigation reports unconstitutionally deprived him of due process of law. This issue was not preserved below, and Rynhart asks us to review it under the doctrine of exceptional circumstances. In this situation, we assess this issue in the first instance, as a matter of law. *See State v. Kozlov*, 2012 UT App 114, ¶ 28, 276 P.3d 1207 (explaining that a plain error, ineffective assistance of counsel, or exceptional circumstances claim "presents a legal question that we review for correctness").

---

3. Rynhart does not point us to any place in the record where his rule 22 motion was resolved by the district court. And the State notes in its brief that "[t]here is no order or minute entry indicating [that] the district court has decided" the motion; based on this, the State posits that the "motion remains pending." The record appears to support the State's assertion, and therefore, for purposes of this appeal, we proceed on the assumption that there is no order resolving Rynhart's rule 22 motion.

¶17 Rynhart also raises two claims of ineffective assistance of counsel. "When an ineffective assistance claim is raised for the first time on appeal, it presents a question of law." *State v. Rivera*, 2022 UT App 44, ¶ 21, 509 P.3d 257.

¶18 Next, Rynhart challenges the legality of his sentence under rule 22 of the Utah Rules of Criminal Procedure. Usually, we review "decisions on challenges to illegal sentences for correctness and grant no deference to the district court." *State v. Mullins*, 2025 UT 2, ¶ 11 (cleaned up). But here, where Rynhart's rule 22 motion remains unresolved before the district court, his arguments are unpreserved for our review, and (as discussed below) he has not asserted that any exception to our preservation requirement applies.

¶19 Finally, Rynhart argues that *Counsel* promised him probation instead of a prison sentence, and that, therefore, *the State* should be equitably estopped from denying probation. This claim appears to be unpreserved, and Rynhart does not argue for any exception to our preservation doctrine. However, because "the merits of [this] claim can easily be resolved" in favor of the State, we "opt to do so without addressing preservation." *State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415. And we address whether Counsel's purported representations are attributable to the State as a question of law.

## ANALYSIS

### I. The Due Process Challenge

¶20 Rynhart first argues that Utah's law governing presentence investigation reports deprived him of due process of law by preventing him from addressing errors in the PSR that harmed him. We need not reach the merits of this argument, however, because Rynhart's challenge is unpreserved.

¶21    In challenging the constitutionality of Utah's presentence report statute, Rynhart compares Utah's law to rule 32 of the Federal Rules of Criminal Procedure, and he observes that there are meaningful differences between the federal and state provisions. Specifically, Rynhart points out that the federal rule requires direct disclosure of the presentence report to the defendant, even if the defendant has an attorney; Utah's law, by contrast, is satisfied by service of a copy of the report on the defendant's attorney, if the defendant is represented. *Compare* Fed. R. Crim. P. 32(e)(2), *with* Utah Code § 77-18-103(4).[4] Rynhart also notes that, under the federal rule, a presentence report must be disclosed to the defendant thirty-five days before the sentencing hearing, and that the rule allows fourteen days for the defendant to object to inaccuracies in the report; Utah's law, by contrast, requires disclosure only "three working days" before the sentencing hearing. *Compare* Fed. R. Crim. P. 32(e)(2), (f)(1), *with* Utah Code § 77-18-103(4). Finally, Rynhart observes that, under the federal scheme, the sentencing judge does not see the report until after it has been reviewed by the parties and any objections have been raised; under Utah's scheme, by contrast, the sentencing judge receives a copy of the report at the same time as the defendant's attorney. *Compare* Fed. R. Crim. P. 32(e)(1), (g), *with* Utah Code § 77-18-103(4). Rynhart views the federal rule as superior because, as he sees it, it helps ensure that errors in a presentence report are caught and addressed before the court sees them. Indeed, Rynhart goes so far as to assert that, because it does not include the additional protections contained in the federal rule, Utah's law is unconstitutional.

---

4. The presentence report statute has been amended and renumbered since Rynhart's sentencing. At the time of his sentencing, it was codified as Utah Code section 77-18-1(6) (2008). Because the relevant provision has not materially changed, we cite the current version of the code.

¶22   In this case, Rynhart's due process challenge stands uncontested on appeal because the State did not respond to this argument in its brief. But an appellee's failure to respond to an argument "does not amount to an automatic default and consequent reversal of the lower court," *Farman-Rava v. Blu Auto Transp. LLC*, 2021 UT App 93, ¶ 5 n.2, 498 P.3d 24 (cleaned up), and it is not "a confession of error on the part of the appellee," *State v. Sorbonne*, 2020 UT App 48, ¶ 16 n.3, 462 P.3d 409, *aff'd*, 2022 UT 5, 506 P.3d 545. "In such situations, we still must consider whether the appellant has carried its burden of persuasion on appeal," *Zions Bancorporation, NA v. Schwab*, 2023 UT App 105, ¶ 14, 537 P.3d 273 (cleaned up), but that burden is significantly lower, *see AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 ("This is a lower standard than the typical burden of persuasion on appeal."). If we were to reach the merits of Rynhart's argument, he would need only to establish "a prima facie showing of a plausible basis for reversal." *Id.* (cleaned up); *see also Mitchell v. Arco Indus. Sales*, 2023 UT App 70, ¶ 22, 533 P.3d 394 ("Our supreme court has previously held that it is appropriate to rule in favor of an appellant if the appellant establishes a prima facie showing of a plausible basis for reversal and the appellee fails to brief the argument." (cleaned up)).

¶23   But here, Rynhart acknowledges that he failed to preserve his challenge for appellate review. We are thus confronted with an unusual situation: an appellant has made an unpreserved argument, and the appellee has completely failed to respond. In a somewhat analogous situation, our supreme court noted that it is "well within [the] prerogative" of an appellate court "to raise a preservation issue on [its] own initiative when [lack of preservation] provides an alternative basis for affirmance, even if the [appellee] failed to brief the preservation argument." *See State v. Malo*, 2020 UT 42, ¶ 20 n.7, 469 P.3d 982. We choose to exercise that prerogative here, and we therefore proceed to examine the preservation issues despite the State's failure to raise them.

¶24    Ordinarily, an issue must first be raised in the district court to be preserved for review. *See Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (stating that appellate courts "generally will not consider an issue unless it has been preserved for appeal"). The purpose of this rule is to "put the [district] court on notice of an issue and provide it with an opportunity to rule on it." *State v. Florez*, 2020 UT App 76, ¶ 33, 465 P.3d 307 (cleaned up). When an issue is not properly preserved, we will not consider it on appeal unless one of the exceptions to our preservation doctrine applies. *See State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867. And there are three such exceptions: "plain error, ineffective assistance of counsel, and exceptional circumstances." *State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443.

¶25    Here, Rynhart does not assert that the district court plainly erred, nor does he assert that Counsel rendered ineffective assistance by not raising a constitutional challenge to Utah's presentence investigation report statute.[5] Instead, Rynhart attempts to tap into the third exception to our preservation requirement, arguing that exceptional circumstances exist here that permit appellate review of his unpreserved constitutional challenge. The "exceptional circumstances" exception to our preservation doctrine is "often invoked but rarely applied." *State v. Dowhaniuk*, 2025 UT App 100, ¶ 19, 574 P.3d 1000. Indeed, we apply it only "where a rare procedural anomaly has either prevented an appellant from preserving an issue or excuses a failure to do so." *State v. Van Huizen*, 2019 UT 01, ¶ 22, 435 P.3d 202 (cleaned up); *see also Johnson*, 2017 UT 76, ¶ 29 (stating that the "exceptional circumstances doctrine is applied sparingly" and is reserved "for the most unusual circumstances where our failure

---

5. As discussed later, Rynhart does argue that Counsel was ineffective for failing to address certain purported errors in the PSR. But at no point does he assert that Counsel performed deficiently by failing to raise a constitutional due process challenge to Utah's presentence investigation report statute.

to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice" (cleaned up)). Only if a rare procedural anomaly exists does the door open "to a deeper inquiry" in which "additional factors must be considered to determine whether an appellate court should reach an unpreserved issue." *Johnson*, 2017 UT 76, ¶ 29.

¶26    In this case, the record is clear: no exceptional circumstance exists that would justify disregarding our preservation requirement. There was no rare procedural anomaly here that prevented Rynhart from making his constitutional challenge to the district court in the first instance. Rynhart, through Counsel, received a copy of the PSR in advance of the sentencing hearing, and he was able to identify errors in it that were discussed with the sentencing court. And Rynhart makes no assertion that he was somehow prevented from learning about the Utah law governing presentence reports or that he was somehow prevented from challenging the constitutionality of that statute. In this situation, nothing prevented Rynhart from challenging the particulars of Utah's statute governing presentence reports; indeed, he could have specifically argued that any purported errors in the PSR should have been resolved before the court received the PSR to avoid any potential bias that might result from the court seeing an errant recommendation. But Rynhart raised no such challenge.

¶27    We therefore see no exceptional circumstance—no rare procedural anomaly—that would justify our review of Rynhart's admittedly unpreserved constitutional challenge. On that basis, we decline to assess the merits of that challenge.

## II. The Ineffective Assistance Claim for Errors in the PSR

¶28    Next, Rynhart asserts that Counsel rendered ineffective assistance by failing to object to several purported errors in the PSR. For the reasons discussed below, we disagree.

¶29 To succeed on an ineffective assistance claim, Rynhart must make a two-part showing: (1) that Counsel's performance "fell below an objective standard of reasonableness," and (2) that this deficient performance "prejudiced the defense" such that "there is a reasonable probability that, but for [C]ounsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *accord State v. Scott*, 2020 UT 13, ¶ 28, 462 P.3d 350; *State v. Ray*, 2020 UT 12, ¶ 24, 469 P.3d 871. Failure to prove either component is fatal; "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. Thus, "if either is lacking, the claim fails and this court need not address the other." *State v. Kufrin*, 2024 UT App 86, ¶ 55, 551 P.3d 416 (cleaned up).

¶30 In this case, Rynhart claims that Counsel performed deficiently by not identifying—and challenging at the sentencing hearing—several things in the PSR that Rynhart now claims were erroneous. Rynhart centers his claim on the following purported errors: (1) the PSR's recommendation of prison sentences of twenty-five years to life and fifteen years to life instead of three years to life, (2) the Sentencing Matrix's inclusion of a class C misdemeanor and the derivative issues related to that prior conviction, and (3) the Sentencing Matrix's point allocation for Rynhart's two-plus year history of sexual offenses. For the reasons discussed, either Counsel's performance was not deficient or any deficiency did not prejudice Rynhart.[6] We discuss each of these purported errors in turn.

---

6. With regard to each of these three purported errors in the PSR, Rynhart asserts that Counsel rendered ineffective assistance in four respects. One of those assertions—that Counsel did not "consult" with him "when the judge expressed concern" over his

(continued…)

A

¶31    Rynhart first argues that Counsel was ineffective for electing not to seek a continuance of the sentencing hearing when it came to light that the PSR erroneously recommended that Rynhart serve sentences of twenty-five years to life and fifteen years to life on the first-degree felonies, instead of three years to life (the applicable statutory sentence at the time of the events in question). But Counsel's performance was not deficient because Counsel fully resolved this error with the court at sentencing.

---

"right to withdraw his plea"—is inadequately briefed. Rynhart simply does not develop this argument, so we do not discuss it further. *See Cottam v. IHC Health Services Inc.*, 2024 UT App 19, ¶ 15, 544 P.3d 1051 ("An appellant's claim is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." (cleaned up)); *see also State v. Thomas*, 961 P.2d 299, 304 (Utah 1998) ("It is well established that a reviewing court will not address arguments that are not adequately briefed.").

Rynhart's other three assertions are as follows: (i) Counsel "failed to inform" Rynhart about the PSR so that he could "examine and fix [the] errors" before sentencing; (ii) Counsel did not refer the PSR back to Adult Probation and Parole for correction; and (iii) Counsel "chose to move forward . . . with the [PSR] being in error" rather than "stopping to address [the] errors and discover any other errors by running it past [Rynhart] and informing him about his [PSR]." Each of these claims rests on the premise that there were errors in the PSR that were not addressed and resolved at the sentencing hearing and that those errors resulted in a harsher sentence. Thus, the analysis in this section focuses on the heart of Rynhart's various ineffective assistance claims: the purported errors and any resulting prejudice. As we explain, some of these purported errors weren't errors at all, and the others were not prejudicial.

¶32 Rynhart is correct that the PSR's recommendation of the higher minimum mandatory sentence was erroneous. When Rynhart committed the crimes, attempts to commit rape of a child or to commit aggravated sexual abuse of a child were punishable by a minimum sentence of three years to life. *See* Utah Code § 76-4-102(2)(c) (2006). After Rynhart pled guilty, the penalties for some attempted child sex crimes increased significantly. *See id.* § 76-4-102(1)(d) (2008). For instance, attempted rape of a child was made punishable by a prison sentence of fifteen years to life. *Id.* Rynhart was entitled to be sentenced under the law as it existed at the time he committed the crimes, *see State v. Losee*, 2012 UT App 213, ¶ 38, 283 P.3d 1055 (stating that "the punishment available at the time of sentencing cannot be greater than that available when the defendant committed the crime"), so the PSR should have listed three years to life as the statutory sentence for both of the first-degree felonies to which he pled guilty.

¶33 But Counsel resolved this error at the beginning of the sentencing hearing, after the district court raised the issue sua sponte. The court acknowledged the error and asked whether Counsel was "willing to go forward with the presentence report being in error, *but noting the corrections*." (Emphasis added.) And in the end, the district court sentenced Rynhart to three years to life on the first-degree felony charges, and not fifteen years to life or twenty-five years to life. Thus, we cannot conclude that Counsel's performance was deficient, because Counsel addressed the error, the court resolved the error, and the court's sentencing did not include the wrong statutory minimum sentence.

B

¶34 Rynhart next argues that the Sentencing Matrix's point allocation for his prior class C misdemeanor for maintaining a nuisance was an error Counsel should have resolved. Rynhart also claims that the derivative issues related to this misdemeanor—the supervision history and supervision risk

point allocations—were erroneous. But Counsel's performance was not deficient, because the inclusion of the misdemeanor and related issues was not an error under the sentencing guidelines at the time.

¶35 When Rynhart was sentenced, the criminal history assessment within a presentence report took into account class C misdemeanors. *See* 2008 Sentencing Guidelines at 5. Indeed, Rynhart's nuisance citation was included under the category entitled "prior misdemeanor convictions," which excluded only minor traffic citations. Thus, Counsel could have reasonably relied on the then-current sentencing guidelines and concluded that the misdemeanor properly belonged in the PSR.

¶36 Rynhart resists this conclusion by pointing out that, sometime after his sentencing, the sentencing guidelines changed and limited discussion of misdemeanor offenses in presentence reports to class A misdemeanors. Even so, we assess Counsel's performance by asking "whether the strategy Counsel employed was that of a reasonable, competent lawyer in the real-time context." *State v. Wilkes*, 2020 UT App 175, ¶ 24, 479 P.3d 1142; *see also Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). And in 2008, presentence reports could include class C misdemeanors and only excepted minor traffic violations. *See* 2008 Sentencing Guidelines at 5. Thus, it was not objectively unreasonable for Counsel to rely on the sentencing guidelines in effect at the time Rynhart was sentenced.[7]

---

7. Rynhart also contests the misdemeanor on substantive grounds, arguing that he was not properly cited with maintaining a

(continued…)

¶37    For these reasons, we cannot conclude that the supervision history and supervision risk point allocations were errors that Counsel should have contested at the sentencing hearing. Even if presentence reports assess these categories somewhat differently now, we cannot conclude that Counsel acted unreasonably by opting not to lodge a challenge to those point additions at the time of Rynhart's sentencing.

¶38    Accordingly, we reject Rynhart's assertions regarding the nuisance misdemeanor because Rynhart has not demonstrated that Counsel performed deficiently.

C

¶39    Finally, Rynhart argues that the PSR erroneously allocated maximum points for the "time range" of past sexual offenses and, in turn, that Counsel was ineffective for failing to raise that issue with the sentencing court. But on the record before us, Rynhart has not demonstrated that he was prejudiced by Counsel's performance in this regard.

¶40    Under the 2008 version of the sentencing guidelines, four points may be allocated to a defendant in the criminal history assessment "[i]f the offender has any sex offense *conviction* over two years old," whereas only one point is assigned for the "present offense." *See* 2008 Sentencing Guidelines at 14 (emphasis added). And those guidelines instruct that the "date of conviction is determinative for purposes of this section." *Id.* Because Rynhart did not have any prior sex offense conviction over two years old

---

nuisance because he did not own the property at issue but only helped take care of it. But the sentencing hearing for his 2006 sex crimes was not the proper place to adjudicate the merits of that past conviction, nor can we fault Counsel for not raising those substantive arguments.

prior to his 2008 convictions, we agree with Rynhart that the four-point allocation was erroneous.

¶41   But even if we assume, for purposes of the discussion, that Counsel performed deficiently by not explicitly asking for this error to be corrected in the PSR, Rynhart has not demonstrated that he was prejudiced by any such deficient performance. As an initial matter, there is no indication in the record that the district court based its sentence—and, specifically, its decision to impose consecutive sentences—on the four-point addition to the Sentencing Matrix. Instead, the court explained that it was imposing a strict sentence out of a concern that Rynhart was not taking responsibility for his actions. Specifically, the court said that "a 10-year-old's coming on to" Rynhart was "not only at odds with [Mindy's] own statement, but . . . at odds with common sense." The court continued by stating that a "10-year-old isn't capable of making that type of a decision and [Rynhart], as an adult, and frankly a highly educated adult, knows that." Thus, it was Rynhart's lack of remorse and insistence that he did not make the first move on a ten-year-old that provided the primary stated basis for the court's imposition of consecutive sentences.

¶42   It is true that the court further explained that "the length of time that these events occurred over, and the number of incidents," made "consecutive sentencing . . . appropriate." But we do not take this statement to be a reference to the "time range" column on the Sentencing Matrix. Instead, the PSR's factual summary detailed instances of abuse that spanned approximately two years—the explicit photographs of Mindy taken in 2004 and the separate instances of abuse in 2006. So, even though the PSR should not have allocated points for a time range of two-plus years, it was nevertheless appropriate for the court to consider the number and span of the instances of abuse and Rynhart's character when determining whether to run the sentences consecutively. *See* Utah Code § 76-3-401(2) ("In determining whether state offenses are to run concurrently or consecutively,

the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant."). Thus, on this record, we see no reasonable probability of a different sentence in a counterfactual sentencing hearing in which the court had been made aware of the four-point-addition error.

¶43   And to the extent that Rynhart is asserting that he has been prejudiced in post-sentencing parole decisions, we note that the "time range" point allocation was corrected by the Board of Pardons and Parole in 2011, just three years into Rynhart's prison sentence. Rynhart's time range assessment was reduced from "two years or over" to "one time incident," resulting in the reduction of three points. Thus, the error was corrected relatively early in Rynhart's prison term, and Rynhart has not attempted to explain how the error might have affected his parole eligibility.

¶44   Thus, even if we assume that Counsel performed deficiently by not correcting the four-point addition, Rynhart has not demonstrated that he was prejudiced by that inaction. Accordingly, we reject Rynhart's final claim of ineffective assistance.

### III.  The Rule 22 Motion

¶45   Next, Rynhart invokes rule 22 of the Utah Rules of Criminal Procedure, and he challenges his sentences of three years to life on the first-degree felony charges as ambiguous and internally contradictory. For the reasons discussed, Rynhart's rule 22 challenge is unpreserved and not properly before us.

¶46   Under rule 22, a defendant may file a motion with the district court to correct an erroneous sentence, and the rule requires a court to "correct a sentence" when (among other situations) the sentence imposed "is ambiguous as to the time and manner in which it is to be served" or "is internally contradictory." Utah R. Crim. P. 22(e)(1)(D), (E). Rynhart invokes

these provisions here, and he asserts that his first-degree felony sentences of "three years to life" in prison are "ambiguous" and "internally contradictory."

¶47    But as noted, rule 22 requires that these issues be raised in the first instance by motion in the district court. *See id.*; *State v. Mullins*, 2025 UT 2, ¶ 30. Indeed, our supreme court recently clarified that "if a defendant seeks to raise on appeal a challenge to his sentence that he did not raise in his [rule] 22(e) motion before the district court," our appellate courts "will hear the unpreserved issue only if the defendant can show that an exception to preservation applies." *Mullins*, 2025 UT 2, ¶ 30; *see also id.* ¶¶ 22–30 (discussing the prior version of rule 22 and its appellate reviewability in the first instance in contrast with the amended rule's language indicating action in the district court).

¶48    In this case, Rynhart filed a rule 22 motion with the district court. He did so in August 2020, after the amendments to rule 22 had been made. *See* Utah R. Crim P. 22. But Rynhart never submitted that motion for decision in the district court, so the court never had the opportunity to rule on it. Indeed, Rynhart points to no place in the record showing that such a ruling was ever made. Thus, Rynhart has not complied with rule 22's requirement that such motions be made and adjudicated in the district court in the first instance. As such, Rynhart's rule 22 arguments are unpreserved for our review.

¶49    And Rynhart does not argue that one of the three exceptions to our preservation requirement permits our review of the merits of his argument, as *Mullins* requires. *See* 2025 UT 2, ¶ 30. Therefore, we cannot address Rynhart's rule 22 motion in the first instance without some basis for an exception under our preservation doctrine. Accordingly, we do not reach the merits of Rynhart's rule 22 arguments.

## IV. Equitable Estoppel

¶50    Rynhart next raises an equitable estoppel claim, arguing that *Counsel* promised him that he would be afforded the privilege of probation instead of being sentenced to prison, and that because of this promise, *the State* should be equitably estopped from imposing the prison sentence. This argument fails.

¶51    As an initial matter, this claim appears to be unpreserved. However, because "the merits of [this] claim can easily be resolved" in favor of the State, we "opt to do so without addressing preservation." *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415.

¶52    "As a general rule, estoppel may not be invoked against a governmental entity." *Anderson v. Public Service Comm'n*, 839 P.2d 822, 827 (Utah 1992). Indeed, "it is well settled that equitable estoppel is only assertible against the State or its institutions in unusual situations in which it is plainly apparent that failing to apply the rule would result in manifest injustice." *Holland v. Career Service Review Board*, 856 P.2d 678, 682 (Utah Ct. App. 1993). In such cases, "the critical inquiry is whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception." *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 720 (Utah 1982). "The few cases in which Utah courts have permitted estoppel against the government have involved very specific written representations by authorized government entities." *Anderson*, 839 P.2d at 827. To establish an equitable estoppel claim against the State, Rynhart must show that (1) the State made a statement that is inconsistent with a position later taken, and (2) Rynhart reasonably relied on that statement (3) to his detriment. *See Holland*, 856 P.2d at 682.

¶53    Rynhart's estoppel argument stands uncontested on appeal because the State did not respond to this argument in its brief, so we apply the lower standard for Rynhart's burden of persuasion. As explained, *supra* ¶ 22, when an appellee fails to

respond to an argument, the appellant need only establish "a prima facie showing of a plausible basis for reversal." *AL-IN Partners, LLC v. LifeVantage Corp.*, 2021 UT 42, ¶ 19, 496 P.3d 76 (cleaned up).

¶54 But here, Rynhart cannot establish even a prima facie showing of a plausible basis for relief on his estoppel claim because he erroneously attributes to the State the statements purportedly made by Counsel.[8] Indeed, Rynhart does not point to any statement made by the prosecutor in this case regarding the possibility of probation or a suspended prison sentence.

¶55 Rynhart's argument rests on the assumption that a criminal defense attorney is a state actor, a rather striking assertion for which Rynhart cites no authority. In fact, a criminal defense attorney—even one appointed by the court and paid for by public funds—is not a state actor; such attorneys, by virtue of their representation, are specifically hired to take a position that is adversarial to the State. *See Vermont v. Brillon*, 556 U.S. 81, 91 (2009) (stating that, "except for the source of payment, the relationship between a defendant and the public defender representing him is identical to that existing between any other lawyer and client," and that "unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor" (cleaned up)); *cf. Polk County v. Dodson*, 454 U.S. 312, 318–19 (1981) (holding that a criminal defense lawyer is not "a state actor under color of state law," and reasoning that "a defense lawyer characteristically opposes the designated representatives of the State" and "best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing the undivided interests of his client" (cleaned up)). We are aware of no support for the

---

8. Rynhart makes this point clear in his brief: "We are challenging the PROMISE Counsel and his team (i.e., investigator) made to [Rynhart]. We are *not* challenging the plea or conviction."

proposition that a criminal defense attorney is considered a state actor for purposes of an estoppel claim.

¶56 Instead, Rynhart directs our attention to *Commonwealth v. Cosby*, a Pennsylvania case where a *prosecutor* was equitably estopped from changing his position after representing that the state would not prosecute the defendant. *See* 252 A.3d 1092, 1128–29 (Pa. 2021). There, a prosecutor had "announced to the public, on behalf of the Commonwealth of Pennsylvania, that he would not prosecute [the defendant] for any offense related to the 2004 sexual abuse that [a claimant had] alleged." *Id.* at 1128. After analyzing the prosecutor's public statement and the defendant's actions that followed, the court held that "when a *prosecutor* makes an unconditional promise of non-prosecution, and when the defendant relies upon that guarantee to the detriment of his constitutional right not to testify, the principle of fundamental fairness that undergirds due process of law in our criminal justice system demands that the promise be enforced." *Id.* at 1131 (emphasis added).

¶57 But *Cosby* involved the prosecutor's actions, not defense counsel's. *See id.* at 1128–29. And Rynhart provides no analysis for why the duties and constitutional limitations applied to prosecutors in this context should be extended to defense attorneys. Accordingly, Rynhart has not borne even a reduced burden of persuading us that Counsel ought to be considered a state actor whose representations may estop the State in a criminal case. On this basis, we reject Rynhart's estoppel claim.

## V. The Ineffective Assistance Claim for a Purported Promise of Probation

¶58 Finally, Rynhart argues that Counsel provided ineffective assistance by purportedly promising Rynhart that he could obtain probation instead of being sentenced to prison. In particular, he claims that "Counsel's performance crossed the line with the bait-and-switch he used on [Rynhart] and should be considered . . .

ineffective assistance of counsel." And he argues that he was prejudiced because, in reliance on Counsel's representations, he "waived his right to a trial," among other rights. As explained, *supra* ¶ 29, to succeed on an ineffective assistance claim, Rynhart must demonstrate both deficient performance and prejudice. And here, Rynhart cannot demonstrate that he was prejudiced by any purported representations made by Counsel, because the record shows that Rynhart knew full well that he was not entitled to receive probation.

¶59 First, in his plea agreement, Rynhart acknowledged that "the maximum sentence" could be "imposed for each crime to which" he pled guilty and that his "sentence may include a prison term, fine, or both." At the time, attempted rape of a child and attempted aggravated sexual abuse of a child each were punishable by three years to life, and sexual exploitation of a minor was punishable by one to fifteen years in prison. *See* Utah Code §§ 76-5-402.1(2), -404.1(5), 76-5a-3, 76-4-102(2)(c), 76-3-203(2) (2006). Rynhart also acknowledged that his guilty plea was "the result of a plea bargain" and that "[a]ll the promises, duties and provisions of the plea bargain, if any, [were] fully contained in [the] statement."

¶60 Next, during the plea hearing, Counsel stated on the record that he had explained to Rynhart that attempted rape of a child "carries at least three years to life" as a "minimum mandatory prison time." And Rynhart confirmed to the court that he understood "that even though there may be a recommendation that the penalties be less" than the maximum potential sentences, the court "could ignore that recommendation" and sentence Rynhart "up to the maximum and run [the sentences] consecutive[ly]." And when the court asked Rynhart whether any "promises" had been made "in connection with" his guilty plea, Rynhart answered in the negative. We have explained that, in the plea context, "solemn declarations in open court carry a strong presumption of verity." *State v. Archuleta*, 2019 UT App 136, ¶ 20,

449 P.3d 223 (cleaned up). Indeed, "the truth and accuracy of a defendant's statements during the plea colloquy should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his plea colloquy statements." *Arriaga v. State*, 2018 UT App 160, ¶ 15, 436 P.3d 222 (cleaned up), *aff'd*, 2020 UT 37, 469 P.3d 914.

¶61 Finally, at sentencing, Counsel stated on the record, "[W]e were hoping [the court] would ignore the prison [sentence recommendation] and go with something else. But we knew when we pled this out that it was [going to] be prison, and it was [going to] be three years to life on the first two counts."

¶62 Taken together, these facts show that Rynhart repeatedly affirmed that he understood that a prison sentence of three years to life was within the discretion of the sentencing court and that the court was not bound by any recommendations of the parties. Rynhart also affirmed that no promises had been made regarding his sentencing. We therefore cannot conclude that Rynhart was prejudiced by any purported promises of probation by Counsel. *See McCormick v. State*, 2014 UT App 49, ¶ 3, 321 P.3d 1172 (per curiam) ("[R]egardless of his attorney's suppositions about the possible sentence, [the defendant] was put on notice that the sentence could be greater than what his attorney expected.").

CONCLUSION

¶63 Rynhart failed to preserve for our review his constitutional due process claim and his rule 22 sentencing claim, and on that basis we decline to assess the merits of those arguments. Rynhart also failed to preserve his equitable estoppel claim, but we reject that claim on its merits because Rynhart has not borne even a reduced burden of persuading us that Counsel was a state actor. And Rynhart has not demonstrated that Counsel rendered constitutionally ineffective assistance. Accordingly, we reject all of Rynhart's arguments and affirm his sentence.